662 A.2d 641

ENERGY PIPELINE COMPANY, a corporation, Energy Production Company, a corporation, Managing Venturers, on behalf of Bessie 8, a Pennsylvania joint venture, and Bethlehem Steel Corporation, a corporation,

v.

The PENNSYLVANIA PUBLIC UTILITY COMMISSION and Peoples Natural Gas Company

Appeal of The PENNSYLVANIA PUBLIC UTILITY COMMISSION.

ENERGY PIPELINE COMPANY, a corporation, Energy Production Company, a corporation, Managing Venturers, on behalf of Bessie 8, a Pennsylvania joint venture, and Bethlehem Steel Corporation, a corporation,

v.

The PENNSYLVANIA PUBLIC UTILITY COMMISSION and Peoples Natural Gas Company

Appeal of PEOPLES NATURAL GAS COMPANY.

Supreme Court of Pennsylvania.

Argued April 26, 1995.

Decided July 19, 1995.

review by this Court to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

Patricia Krise Burket, Asst. Counsel, Frank B. Wilmarth, Deputy Chief Counsel, John F. Povilaitis, Deputy Chief Counsel, for PUC.

William P. Boswell, Dennis J. Lewis, Pittsburgh, for PNG.

Joan O. Brandeis, Philadelphia, Joseph L. Robinson, John P. Edgar, Pittsburgh, for Bethlehem Steel.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION OF THE COURT*

CAPPY, Justice.

In this appeal we are faced with the question of whether a tie vote of the Pennsylvania Public Utilities Commission (PUC) can constitute a final "action" by the PUC. Because we find that a tie vote cannot constitute action, we reverse the Commonwealth Court.

This dispute has its roots in a Pipeline Construction, Natural Gas Sales and Transportation Agreement (Agreement) entered into by Energy Production Company (Energy Production), Energy Pipeline Company (Energy Pipeline), and Bethlehem Steel Corporation (Bethlehem Steel) in 1984. The Agreement provided for the sale of natural gas by Energy Production to Bethlehem Steel, and the construction and operation of a pipeline by Energy Pipeline to transport natural gas to Bethlehem Steel's plant in Johnstown, Pennsylvania. Energy Production and Energy Pipeline became the Managing Venturers of a joint venture known as Bessie 8, and entered into a joint venture agreement for the purpose of performing the obligations under the Agreement.[1]

In October of 1985, Appellant Peoples Natural Gas Company (Peoples) filed a complaint with the PUC alleging that Appellees had established a public utility and were in the process of providing natural gas service to the public in violation of 66 Pa.C.S. §§ 1101 and 1102. Peoples sought interim relief and an injunction prohibiting Appellees from supplying natural gas until they obtained the PUC's permission to do so as required by the Public Utility Code (Code). The PUC referred the matter to one of its Administrative Law Judges (ALJ).

After extensive evidentiary hearings, in April of 1988 the ALJ issued an initial decision denying and dismissing Peoples' complaint. The ALJ found that Bessie 8's activities were not subject to the PUC's jurisdiction because they were private in

1. Energy Production, Energy Pipeline, Managing Venturers and Bethlehem Steel Corporation are hereinafter collectively referred to as "Appellees."

nature and did not involve any interstate, intrastate or public utility connections. Peoples timely filed exceptions to this decision with the PUC. The PUC then referred the matter to its Office of Special Assistants (OSA) for a report on the matter. Contrary to the ALJ, the OSA recommended that Peoples' complaint be sustained. The matter was then placed on the PUC agenda for a public meeting and consideration.

The PUC, consisting of only four members at the time, voted on the matter at a meeting on April 6, 1989. During the meeting, the Chairman moved to adopt the ALJ's initial decision and reject the OSA report. The Commissioners reached a two-two tie vote on this motion. Immediately thereafter, another Commissioner made a second motion to *reject* the ALJ's initial decision and adopt the OSA report and recommendation. The Commissioners also reached a two-two tie vote on this motion. Accordingly, the Chairman declared on the record that the Commission had taken "no action" and the matter was tabled for further consideration at a later time. Reproduced Record at 224a. Significantly, the Commission issued no decisions or orders on the matter, on the record or otherwise.

The matter was again placed on the Commission's agenda for public meeting on March 22, 1991. The morning of the meeting, Bessie 8 filed a motion with the PUC requesting a delay of the proceedings and requesting oral argument. After the delay was granted, Bessie 8 withdrew its motion.

The matter was brought up for the third time at a meeting on October 1, 1992. At that time, there were only three Commissioners serving. This time, the Commissioners unanimously voted to sustain Peoples' complaint and held that the Bessie 8 joint venturers had been unlawfully providing public utility service without first having obtained a certificate of public convenience. The PUC entered an order to this effect on December 7, 1992.

Before the order was entered in December, Appellees commenced an action in the Commonwealth Court, addressed to the original jurisdiction of the Commonwealth Court. In its

Petition for Review, Appellees contended that the tie vote reached by the Commissioners at the April 6, 1989 meeting constituted final action and a final order by the PUC denying the relief Peoples requested, and divested the PUC of further jurisdiction over the matter, rendering the October 1, 1992 vote and December 7, 1992 order of no effect. A 4–3 majority of the Commonwealth Court sitting *en banc* agreed, holding that the PUC effectively "affirmed" the decision of the ALJ when the PUC failed to agree to take the action requested by Peoples on April 6, 1989. The majority also found that Peoples was required to appeal from the decision of the PUC at the April 6, 1989 meeting. Because Peoples did not so appeal, the majority held that the ALJ's decision became final and the PUC's December 1992 order was invalid because the PUC had no authority to issue it.

 Appellants now contend that the Commonwealth Court erred in finding that a tie vote of the PUC constitutes final action by the PUC which creates a final order which *must* be appealed at that point if further review is desired. For the following reasons, we agree.[2]

 First, the plain language of the relevant section of the Code, section 301, provides that a majority of the Commission members serving are needed for a quorum and the number

2. As an initial matter, we note that Appellees, who originally initiated this matter in the Commonwealth Court, now argue that this appeal is erroneously before this Court because the Commonwealth Court was acting as an appellate court, not as a court of original jurisdiction, and no allowance of appeal was granted by this Court. We reject this contention. The Commonwealth Court was not acting as a "reviewing" court. Appellees initiated this action with the Commonwealth Court, requesting that the Commonwealth Court make an original adjudication regarding the scope and the meaning of § 301(d) of the Code. Appellees were not requesting a substantive review of the decision made by the PUC on October 1, 1992, and in fact, no such review was made by the Commonwealth Court. In reaching its decision, the Commonwealth Court did not consider any order or adjudication from the PUC by way of review or appeal, nor did it consider the record of prior proceedings in the PUC. We note that it is somewhat disingenuous of Appellees to now argue that the proceedings in the Commonwealth Court were not directed to the original jurisdiction of that court when Appellees made the contrary argument in their Petition for Review to the Commonwealth Court.

needed for the quorum must act *unanimously* for the Commission to make any order or to take any action. Section 301 states:

> (d) Quorum. A *majority* of the members of the commission *serving* in accordance with law shall constitute a quorum and such majority acting *unanimously,* shall be required for *any action,* including the making of any order or the ratification of any act done or order made by one or more of the commissioners. No vacancy in the commission shall impair the right of a quorum of the commissioners to exercise all the rights and perform all the duties of the commission.

[Emphasis added.] Thus, under section 301, where there are only four commissioners, three commissioners constitute a quorum, and those three commissioners must vote *unanimously* for the PUC to undertake *any* action. A two-two vote is not a majority to adopt or deny any action.[3] Plain words of a statute cannot be disregarded where language is free and clear from all ambiguities. *Hyser v. Allegheny Co.,* 61 Pa. Commw. 169, 434 A.2d 1308 (1981). We agree with Judge Pellegrini's dissent that the Commonwealth Court majority's analysis "is flawed by its failure to recognize that there is a shifting quorum and it ignores that the [Code] requires a majority of the quorum to take any action." 160 Pa.Commw. 510, 521–23, 635 A.2d 675, 681 (1993).[4]

We also find that the Commonwealth Court erred in equating the PUC's split vote as a refusal to take any action and

---

3. Appellees contend that to permit the PUC to table certain proposals through deadlock votes, only to revisit the issue months or years later, violates notions of fundamental fairness. However, the statute could not be more clear that any action by the PUC must be by unanimous vote. Such statute reflects the will of the legislature that matters before the PUC be determined by a unanimous majority, not by tie votes. Moreover, it is unclear how Appellees have been unfairly affected by delayed action. When Appellees entered into the Agreement, they assumed the risk that at some point their operations may be deemed to be a public utility. The fact that it was deemed to be such later rather than sooner does not appear to be of real consequence.

4. Notably, the statute does not define a "quorum" as a fixed number, but rather as "a majority of the members of the commission serving in accordance with law."

was therefore an effective "affirmance" of the ALJ's decision.[5] The ALJ and the PUC are not comparable to a trial court/appellate court system. The process by which complaints are handled by the PUC is as follows. First, the ALJ reviews the subject matter of the complaint and makes a decision. This decision is not final, nor is it an order at this point. There are two different routes that may be taken by which a final order will eventually be entered. First, if no exceptions are filed by either party and an appeal is not taken within 15 days of the ALJ's initial decision *and* if the PUC does not *sua sponte* enter an alternate order, the ALJ's initial decision becomes final. 66 Pa.C.S. § 332(h). However, if exceptions *are* filed, then the matter is taken to the PUC, where "the PUC has all the powers which it would have had in making the initial decision . . ." 66 Pa.C.S. § 335(a). The PUC has the power to conduct its own fact finding, to adopt or reject the ALJ's decision, or to come to an entirely different resolution. Thus, if exceptions are filed, only the PUC can take action, and the ALJ's decision cannot take on the force and effect of an order. Importantly, in considering the matter, any action that is taken by the PUC must comply with the quorum/unanimity provisions of § 301(d).

When considering the process by which decisions are made, therefore, it is unclear how the Commonwealth Court can deem inaction, *i.e.*, what is specifically *not* action under § 301(d), to result in the adoption of the ALJ's recommendation, which they have in fact been unable to reach agreement on. Nor do the facts of this case support the contention that "final action" was taken by the PUC in this matter at the April 6, 1989 meeting. The Commissioners voted on *two* different

---

5. The Commonwealth Court's reliance on other case law which has found that a tie vote can be a disapproval of a proposal or a refusal to adopt a proposal is incorrect inasmuch as those cases are inapposite to this case. *See e.g., Crossgates, Inc. v. Board of Commissioners of Public Grounds and Buildings*, 145 Pa.Commw. 339, 603 A.2d 276 (1992); *Giant Food Stores v. Zoning Hearing Board*, 93 Pa.Commw. 437, 501 A.2d 353 (1985). These cases were concerned with interpreting entirely different statutes, which did not contain an express provision stating the formal requirement for agency action or the making of an order. We do not find that these cases are instructive as to the meaning of 66 Pa.C.S. § 301(d), which is the statute under consideration by this Court.

motions, one supporting the ALJ's recommendation, one supporting the OSA's recommendation. *Both* recommendations resulted in a two-two deadlock vote.[6]

We also reject the Commonwealth Court's finding that Peoples was required to appeal from the April 6, 1989 two-two vote. As discussed above, no final action was taken by the PUC and no order was entered.[7] Additionally, from the facts of this case, it is certainly not clear how either party should have known they were required to appeal the two-two votes, since the Chairman specifically stated that no action had been taken with respect to either recommendation and the matter was tabled for future consideration. Under the Commonwealth Court's reasoning, it is also unclear, in the situation where two conflicting proposals are raised and voted on, but neither is adopted, which party would be required to appeal.

For the foregoing reasons, we find that no action was taken by the PUC at the April 6, 1989, meeting, and therefore the

**6.** Notably, the way in which proposals are brought up to vote by the PUC is by motion. That is, a commissioner presents a motion to take action on a matter, whether the matter be an ALJ's decision or a staff report or a committee recommendation. That *motion* is then voted on. Thus, the "review" by the PUC of an ALJ's decision is not the same as the review by an appellate court of a lower tribunal's decision. The vote by the PUC is to take certain action, not to affirm or reverse an ALJ's decision.

**7.** We agree with Judge Pellegrini's dissent that *AT & T Communications of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 131 Pa.Commw. 390, 570 A.2d 612 (1990) is distinguishable from this case. In *AT & T,* the Commonwealth Court held that a two-two vote by the PUC was equivalent to a rejection of an ad hoc committee's recommendation regarding a local telephone exchange carrier's role in interexchange customer billing inquiries and thus was a final order from which an appeal would lie. Significantly, the court did not put section 301(d) at issue in that case. Rather, the issue was whether the complainants were put "out of court" by the PUC's two-two vote, and as a result whether the complainants should be entitled to an appeal. Thus, the court was faced with determining whether a vote by the PUC, which has the unofficial "effect" of a rejection, can be considered final for appeal purposes, a judicial conclusion which results from the practical effects of the order rather than a technical interpretation. Here, that question is not before us; neither party was "put out of court" by the April 6, 1989 tie vote and neither party attempted to appeal the tie votes. In this case, the issue is whether under § 301(d) final action had been taken at the April 1989 meeting.

PUC was not prohibited from acting on October 1, 1992. Accordingly, the order of the Commonwealth Court is reversed and Appellees' Petition for Review is denied.

MONTEMURO, J., is sitting by designation.