# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonio Romeo, : 
           Petitioner : 
            : 
      v. : No. 498 C.D. 2016
            : Submitted: September 23, 2016
Pennsylvania Public Utility : 
Commission, : 
           Respondent : 

BEFORE: HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY JUDGE BROBSON          FILED: February 8, 2017

Antonio Romeo (Romeo) petitions *pro se* for review of the order of the Pennsylvania Public Utility Commission (Commission), adopting the Initial Decision of an Administrative Law Judge (ALJ) and dismissing Romeo's exceptions to the Initial Decision. We now affirm, in part, reverse, in part, and remand the matter for further proceedings.

As background, by Act 129 of 2008 (Act 129),[2] the General Assembly amended the Public Utility Code (Code),[3] for the purpose of reducing energy consumption and demand. Act 129 set in motion a multi-phase implementation process that addresses electric distribution companies and default service provider

---

[1] This opinion was reassigned to the authoring judge on November 15, 2016.

[2] Act of October 15, 2008, P.L. 1592.

[3] 66 Pa. C.S. §§ 101-3316.

responsibilities, conservation service providers, smart meter technology, time-of-use rates, real-time pricing plans, default service procurement, market misconduct, alternative energy sources, and cost recovery. With regard to smart meters, Act 129 provided that electric distribution companies were to provide the Commission with smart meter technology procurement and installation plans for approval. Section 2807(f) of the Code, 66 Pa. C.S. § 2807(f).

After Act 129's smart meter directive took effect, the Commission adopted a Smart Meter Procurement and Installation Implementation Order (Commission's Smart Meter Order)[4] to "establish the [standards that the smart meter] plan[s] must meet and provide guidance on the procedures to be followed for submittal, review and approval of all aspects of each smart meter plan." (Commission's Smart Meter Order at 1.) PECO Energy Company (PECO) then filed with the Commission a Petition for Approval of its Smart Meter Technology Procurement and Installation Plan (Smart Meter Plan),[5] which the Commission approved after finding it to be in compliance with Act 129.[6]

---

[4] Smart Meter Procurement and Installation Implementation Order – Adopted at June 18, 2009, Public Meeting. Entered June 24, 2009. Docket No. M-2009-2092655 found at http://www.puc.state.pa.us/filing_resources/issues_laws_regulations/act_129_information/smart_meter_technology_procurement_and_installation.aspx (last visited Jan. 26, 2016).

[5] *See* Docket Number M-2009-2123944 found at http://www.puc.pa.gov/about_puc/consolidated_case_view.aspx?Docket=M-2009-2123944 (last visited Jan. 26, 2016).

[6] *See* Docket Number M-2009-2123944 found at http://www.puc.pa.gov/about_puc/consolidated_case_view.aspx?Docket=M-2009-2123944 (last visited Jan. 26, 2016).

In April 2015, Romeo filed a complaint alleging that PECO was threatening to terminate his electric service because he did not allow PECO access to his meter to replace it with a smart meter.[7] Alleging that PECO's attempts to force the installation of a smart meter on his property are in violation of federal law, specifically, the Energy Policy Act of 2005[8] (Energy Policy Act), Romeo claimed that "to the extent that PECO is relying on [Act 129] as a justification for forcing the installation of a smart meter on my property, PECO's actions are in violation of the [Energy Policy Act], which pre-empts Act 129." (Romeo's Complaint, dated April 27, 2015 at 7, ¶ 9).

Romeo asserted that all of his electric bills are paid on time and in full. While he has not denied PECO access to his property in order to read his meter, he has not and will not request the installation of a smart meter on his property. He further claimed that PECO was unfairly targeting him for the installation of a smart meter, as PECO was not trying to force the installation on some of his neighbors. Finally, he asserted that the smart meters cause fires, serious health and safety issues, and privacy concerns, providing links to two news articles about smart meter fires. As relief, Romeo requested that the Commission

---

[7] In an appendix to the Complaint, Romeo explains that after he received a notice from PECO about changing his meter to a smart meter, he called PECO and was unable to resolve the issue. Then he received a termination of service notice, which stated that his "electric service will be shut off on or after May 5, 2015 because 'You did not give us access to our meter and your equipment.'... [and] that PECO will not shut off [the] electric service if [Romeo] '[provides PECO] access to our meter and your equipment.'" (Romeo's Complaint, dated April 27, 2015 at 7, ¶ 4.)

[8] Pub. L. No. 109-58, 119 Stat. 594 (2005).

3

order PECO to refrain from shutting off his electric service and to cease its attempts to install a smart meter on his property.

In response, PECO filed an answer with new matter and preliminary objections averring that, in accordance with Act 129, it was required to install Advanced Metering Infrastructure meters for all of its current Automated Meter Reading customers by the end of 2014. It argued that, pursuant to its tariff, it has the right to access a customer's property at all reasonable times for the purpose of installing, removing, or changing equipment belonging to PECO, and that the tariff allows it to terminate a customer for cause if access to the meter is refused. PECO added that neither Act 129 nor its Smart Meter Plan provides customers an option to opt out of smart meter installation. PECO asserted that because its smart meters are being installed in compliance with state law and the Commission's Smart Meter Order, no legal basis exists for Romeo's complaint and that the complaint should be dismissed as a matter of law. PECO contended in its preliminary objections that Romeo's complaint should be dismissed under the Commission's regulation at 52 Pa. Code § 5.101(a)(4), relating to legal insufficiency. Romeo responded, arguing that PECO failed to address his argument that Act 129 is preempted by federal law, and, accordingly, PECO did not have the authority to force installation of a smart meter on his property.

The ALJ sustained PECO's preliminary objections and dismissed Romeo's complaint, concluding that under state law, a customer does not have the option to opt out of the smart meters that an electric distribution company is required to deploy and install pursuant to its Commission-approved Smart Meter Plan. Explaining that PECO is required by statute and the Commission's Smart Meter Order to implement its Smart Meter Plan, install smart meters throughout its

4

service territory, and charge a smart meter technology surcharge to all of its metered customers, the ALJ concluded that the Commission does not have the authority, absent a legislative directive, to prohibit PECO from installing a smart meter even if a customer does not want one. The ALJ did not address either Romeo's preemption issue or his allegation that the meters were unsafe.

Romeo's exceptions to the ALJ's decision only asserted that the ALJ ignored his argument that federal law preempts Act 129. He went on to argue that the ALJ's conclusion that the Commission does not have the authority to prohibit PECO from installing smart meters is incorrect and "rather, federal law **compels** the Commission to direct PECO to cease and desist in its attempts to force installation of the smart meter." (Romeo's Exceptions to the ALJ's Initial Decision Granting Preliminary Objections, dated July 20, 2015 at 1, ¶ 1 (emphasis in original).) He contended that the ALJ mischaracterized his arguments as "merely seeking to 'opt out' of the installation of the smart meter" when, in fact, he "is asking the Commission to recognize that PECO's acts are being taken in violation of federal law." (*Id.* at 2, ¶ 2.)

The Commission denied the exceptions,[9] adopted the ALJ's decision, and supplemented the ALJ's decision by addressing Romeo's federal preemption challenge.[10] Concluding that Act 129 was not preempted by the Energy Policy Act, the Commission explained:

---

[9] The Commission declined to consider PECO's replies to the exceptions because they were untimely filed. It noted that PECO had filed replies to the exceptions ten days after the July 30, 2015 deadline to file, and PECO did not request or receive an extension of time for filing the replies nor provide any reason for failing to meet the deadline.

[10] Because the ALJ failed to consider Romeo's federal preemption challenge, Commissioner Pamela A. Witmer motioned before a public meeting that the ALJ's initial **(Footnote continued on next page…)**

Section 1252 of the Energy Policy Act amended the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §[] 2621(d), to add provisions relating to smart metering. PURPA expressly allows state regulatory authorities, such as the Commission, to adopt, pursuant to state law, standards or rules affecting electric utilities that are different from the standards set forth in 16 U.S.C. §§ 2621, *et seq.* 16 U.S.C. § 2627(b).

(Commission's March 3, 2016 Opinion at 8-9.) While Romeo did not raise it as an exception, the Commission's decision also addressed Romeo's claim that smart meters were dangerous. It concluded that Romeo's challenge to the meters on that basis was legally insufficient because Romeo "has not presented a claim to which he could personally testify that would support a finding that a smart meter was responsible for any fire or damage or other specific safety or health affects he experienced within his home." (*Id.* at 9.) Romeo petitioned this Court for review, and PECO intervened.

On appeal,[11] Romeo again contends that Act 129 is preempted by the federal Energy Policy Act. Romeo also argues that the Commission's decision is

---

**(continued…)**

decision be modified consistent with staff recommendation and prior Commission Orders to include a discussion and legal determination addressing why PECO's mandatory installation of smart meters is not in violation of the Energy Policy Act. Commissioner Witmer moved that the initial decision be modified and that an opinion and order consistent with the motion be drafted. That motion also stated that it did not support the referral of Romeo's health and safety concerns to the Investigation and Enforcement Bureau because his exceptions were limited to the preemption issue and prior referrals involving other complainants had already been referred.

[11] This Court's review is limited to determining whether the Commission violated constitutional rights, committed an error of law, rendered a decision that is not supported by substantial evidence, or violated its rules of practice. *United Transp. Union v. Pa. Pub. Util. Comm'n*, 68 A.3d 1026, 1032 (Pa. Cmwlth.), *appeal denied*, 80 A.3d 779 (Pa. 2013).

contrary to Section 1501 of the Code, 66 Pa. C.S. § 1501, which requires public utilities to maintain adequate, efficient, safe and reasonable service and facilities for their customers, claiming that the smart meters are unsafe, and that the Commission erred in denying him a hearing regarding the safety concerns he raised. The Commission responds that it properly concluded that federal law does not preempt Act 129 and that Romeo waived the remaining issues by not raising them in his exceptions to the ALJ's Initial Decision.

With regard to preemption, Romeo directs our attention to Section 2621(d)(14)(A) of PURPA, 16 U.S.C. § 2621(d)(14)(A), which provides:

> Not later than 18 months after August 8, 2005, each electric utility shall *offer* each of its customer classes, and provide individual customers *upon customer request*, a time-based rate schedule under which the rate charged by the electric utility varies during different time periods and reflects the variance, if any, in the utility's costs of generating and purchasing electricity at the wholesale level. The time-based rate schedule shall enable the electric consumer to manage energy use and cost through advanced metering and communications technology.

(Emphasis added.) Citing to the Supremacy Clause of the United States Constitution,[12] Romeo argues that because Congress has declined to make the installation of smart meters mandatory, Act 129's compulsory installation is contrary to federal law and must be reversed.

---

[12] The Supremacy Clause provides, in relevant part:

This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

Our Supreme Court has established the three ways federal law may preempt state law:

> First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. [Second], preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Office of Disciplinary Counsel v. Marcone*, 855 A.2d 654, 664 (Pa. 2004) (internal citations and quotation marks omitted).

The "critical question in any preemption analysis is whether Congress intended that the federal enactment supersede state law." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 32 (Pa. 2006). If a federal statute has an express preemption provision, the plain words of that expression of preemption guide our preemption analysis. *Id.* Section 2627(b) of PURPA, 26 U.S.C. § 2627(b), entitled "Relationship to State law," explicitly provides that it does not preempt state law: "Nothing in this chapter prohibits any State regulatory authority or nonregulated electric utility from adopting, pursuant to State law, any standard or rule affecting electric utilities which is different from any standard established by this subchapter." Congress has not enacted a provision that preempts Act 129, but rather, has expressly provided for state agencies such as the Commission to adopt standards or rules affecting electric utilities that are different from the standards set forth in PURPA or the Energy Policy Act.

8

Moreover, Section 2621(a) of PURPA, 26 U.S.C. § 2621(a), deals with the interaction between federal and state law and specifically provides that the standards set forth in that act supplement, not preempt, state law:

> Each State regulatory authority (with respect to each electric utility for which it has ratemaking authority) and each nonregulated electric utility shall consider each standard established by subsection (d) of this section and *make a determination concerning whether or not it is appropriate to implement such standard to carry out the purposes of this chapter.* For purposes of such consideration and determination in accordance with subsections (b) and (c) of this section, and for purposes of any review of such consideration and determination in any court in accordance with section 2633 of this title, *the purposes of this chapter supplement otherwise applicable State law. Nothing in this subsection prohibits any State regulatory authority or nonregulated electric utility from making any determination that it is not appropriate to implement any such standard, pursuant to its authority under otherwise applicable State law*.

(Emphases added.) The language of this provision expressly provides that after considering the federal standards, state authorities have the power to choose whether or not to adopt said standards or adopt their own standards.

Because federal standards are a supplement to the state standards, and the state is only required to consider the federal standards, the federal and state standards are not and cannot be in conflict. Moreover, Congress's enactment of multiple provisions under PURPA, all providing that the state is entitled to adopt its own guidelines that are different from those provided under PURPA, is indicative of Congress's lack of intent to occupy the field. Rather, it is indicative of Congress's objective to allow states to regulate how they choose. As such,

9

PURPA and the Energy Policy Act do not preempt the smart meter provisions of the Code or of Act 129.

As to the remaining issues, the Commission argues that because the sole issue Romeo raised in his exceptions in this case is whether the smart meter provision of Act 129 is preempted by federal law, Romeo has preserved only that issue for appeal. Section 335(a) of the Code, 66 Pa. C.S. § 335(a), however, provides:

> (a) Procedures.--When the commission does not preside at the reception of evidence, the presiding officer shall initially decide the case, unless the commission requires, either in specific cases or by general rule, the entire record to be certified to it for decision. When the presiding officer makes an initial decision, that decision then shall be approved by the commission and may become the opinion of the commission without further proceeding within the time provided by commission rule. *On review of the initial decision, the commission has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.* When the commission makes the decision in a rate determination proceeding without having presided at the reception of the evidence, the presiding officer shall make a recommended decision to the commission in accordance with the provisions of this part. Alternatively, in all other matters:
>
>> (1) the commission may issue a tentative decision or one of its responsible employees may recommend a decision; or
>>
>> (2) this procedure may be omitted in a case in which the commission finds on the record that due and timely execution of the functions imperatively and unavoidably so requires.

(Emphasis added.) In *Energy Pipeline Company v. Pennsylvania Public Utility Commission*, 662 A.2d 641 (Pa. 1995), our Supreme Court explained that pursuant to Section 335(a) of the Code:

> [I]f exceptions are filed, then the matter is taken to the [Commission], where "the [Commission] has all the powers which it would have had in making the initial decision . . . ." 66 Pa. C.S. § 335(a). The [Commission] has the power to conduct its own fact finding, to adopt or reject the ALJ's decision, or to come to an entirely different resolution. Thus, if exceptions are filed, only the [Commission] can take action, and the ALJ's decision cannot take on the force and effect of an order.

*Energy Pipeline Co.,* 662 A.2d at 644. Thus, under Section 335 of the Code, once exceptions are filed or once the Commission takes a decision for review *sua sponte* pursuant to 52 Pa. Code § 5.536,[13] the Commission may review the ALJ's decision in its entirety without limit. Thus, the Commission may confine its review to issues raised in exceptions or may review issues not raised in exceptions. There is nothing in the record in this case to indicate that the Commission limited its review by notice or rule. To the contrary, based upon the Commission's order, it is apparent that the Commission reviewed more than the single exception raised by Romeo.

Had the Commission limited its review to the exception raised by Romeo, then the additional issue now raised by Romeo—whether the Commission erred in failing to provide Romeo with a hearing regarding safety concerns—would have been waived. *See Springfield Twp. v. Pa. Pub. Util. Comm'n*, 676 A.2d 304,

---

[13] 52 Pa. Code § 5.536 permits the Commission to review an ALJ's decision to which no exception has been filed if two Commissioners request review within fifteen days of the issuance of the ALJ's decision.

11

309 (Pa. Cmwlth. 1996) (holding that where exception was not raised and "was not considered by" Commission, that issue is waived); *see also Capital City Cab Serv. v. Pa. Pub. Util. Comm'n*, 138 A.3d 119, 132 (Pa. Cmwlth. 2016) (en banc) (holding that where issue is not raised by exception filed with Commission, "it is not preserved for our review."); *accord Pa. Power Co. v. Pa. Pub. Util. Comm'n*, 561 A.2d 43 (Pa. Cmwlth. 1989) (en banc), *aff'd*, 587 A.2d 312 (Pa.), *cert. denied*, 502 U.S. 821 (1991). This waiver principle, however, is not applicable here, where the Commission elected to consider an issue not raised by an exception. Under the circumstances present in this case, where the Commission conducts a review that encompasses issues not raised by an exception, Romeo is not precluded on appeal from raising issues specifically addressed by the Commission.[14]

Having concluded that the remaining issues raised by Romeo are not waived, we now consider the merits of Romeo's arguments. With regard to Section 1501 of the Code and the safety and other concerns raised by Romeo, Romeo argues that the Commission erred in not affording him a hearing regarding his concerns, especially in light of the "clear evidence of the dangers these smart meters pose and [Romeo] should not be forced to have suffered damage to his home or his family's health . . . in order to have the opportunity to challenge the installation of a smart meter at his home." (Romeo's Brief at 8.) The Commission argues, however, that because he cannot personally testify that a smart meter was responsible for any fire, health, or safety defect, Romeo's complaint is legally insufficient as a matter of law.

---

[14] This interpretation is particularly necessary in light of 52 Pa. Code § 5.536, which permits review without exceptions having been filed, because otherwise all issues arguably would be waived and the Commission's order could not be challenged.

What was before the Commission was PECO's preliminary objections, in which all factual allegations are taken as true. Romeo claimed that the smart meters cause safety and fire hazards and have a negative health impact. Just because he cannot personally testify as to the health and safety effects does not mean that his complaint is legally insufficient. He could make out his claim through the testimony of others as well as other evidence that goes to that issue. Because his complaint was not legally insufficient, the Commission erred in dismissing the complaint.

Accordingly, for the foregoing reasons, to the extent that the Commission's order concluded that federal law did not preempt Act 129 as to the installation of smart meters, the Commission's order is affirmed. The portion of the Commission's order, however, sustaining PECO's preliminary objections and dismissing for legal insufficiency Romeo's complaint that smart meters present health and safety concerns is reversed, and the matter is remanded to the Commission for proceedings consistent with this opinion.

P. KEVIN BROBSON, Judge

13

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Antonio Romeo, :
              Petitioner :
 :
       v. : No. 498 C.D. 2016
 :
Pennsylvania Public Utility :
Commission, :
              Respondent :

# **O R D E R**

AND NOW, this 8th day of February, 2017, the order of the Pennsylvania Public Utility Commission, dated March 3, 2016, is AFFIRMED, in part, and REVERSED, in part. The order is AFFIRMED to the extent that it concluded that federal law did not preempt Act 129 of 2008, 66 Pa. C.S. § 2807, as to the installation of smart meters. The order is REVERSED to the extent that it sustained PECO Energy Company's preliminary objection based on legal insufficiency and dismissed Petitioner Anthony Romeo's claim that smart meters present a health and safety concern. This matter is REMANDED to the Commission for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

P. KEVIN BROBSON, Judge