IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| VMDT Partnership, | : |
| | : |
| Appellant | : |
| | : |
| v. | : No. 1277 C.D. 2017 |
| | : Argued: June 6, 2018 |
| City of Philadelphia | : |
| Historical Commission | : |

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                       FILED: July 9, 2018


VMDT Partnership (VMDT) appeals the order of the Philadelphia County Common Pleas Court (trial court) denying VMDT's appeal of the Philadelphia Historical Commission's (Historical Commission) decision to include VMDT's row houses at 81-95 Fairmount Avenue (Property) in the Philadelphia Register of Historic Places (Register). We affirm.

In April 2015, an individual, Oscar Beisert, submitted a nomination for the Property to the Historical Commission for inclusion in the Register. The City's Planning Commission revised the nomination twice. The final revised nomination

proposed consideration of the Property for inclusion in the Register under Subsections (a), (c), (d), and (j) of Section 14-1004(1) of the Philadelphia Code.[1]

At the Historical Commission's September 9, 2016 meeting, a Commissioner introduced a motion to deny the nomination outright because the Property failed to satisfy any of the criteria contained in Section 14-1004(1). The Historical Commission did not approve that motion due to a 4 to 4 tie vote.[2] R.R. at

[1] Section 14-1004(1) of the Philadelphia Code states:

> A building, complex of buildings, structure, site, object, or district may be designated for preservation if it:
>
> (a) Has significant character, interest, or value as part of the development, heritage, or cultural characteristics of the City, Commonwealth, or nation or is associated with the life of a person significant in the past;
>
> * * *
>
> (c) Reflects the environment in an era characterized by a distinctive architectural style;
>
> (d) Embodies distinguishing characteristics of an architectural style or engineering specimen; [or]
>
> * * *
>
> (j) Exemplifies the cultural, political, economic, social, or historical heritage of the community.

*See also* Section 5.2 of the Historical Commission's Rules & Regulations (Regulations), Reproduced Record (R.R.) at 449a (same). In turn, Section 5.11(b) of the Historical Commission's Regulations states, in relevant part, "that the Commission may designate a building, complex of buildings, structure, site, object, public interior portion of a building or structure, or district for preservation if the nominated resource satisfies one or more of the Criteria for Designation." R.R. at 457a.

[2] Section 4.2 of the Historical Commission's Regulations provides that "[a] quorum of the Commission shall consist of eight members. An abstention for any reason shall not affect the

2

240a. Another Commissioner then introduced a motion to accept the nomination and designate the Property as historic under Subsections (a), (c), (d), and (j) of Section 14-1004(1). *Id.* The Historical Commission rejected this motion by a 5 to 3 vote. *Id.* A third Commissioner then introduced a motion to strike Subsections (c) and (d) from the nomination,[3] but the Commission did not approve this motion in a 4 to 4 tie vote. *Id.* The Historical Commission's Chair "stated that he would confer with the Commission's attorney before any final determination was reached, but stated that, in his opinion, the Commission failed to take any action and, therefore, the nomination [was] still pending before the Commission," and "that the nomination would likely be listed on the agenda of the Historical Commission's meeting for October." *Id.* At its October 14, 2016 meeting, the Historical Commission reconsidered the nomination and, in a 6 to 3 vote, passed a motion "find[ing] that it did not take action on the nomination of [the Property] at its September 2016 meeting and to proceed with the review of the nomination." R.R. at 257a. A Commissioner "stated that the item will be placed back on the agenda," and a motion "to grant the property owner's request to continue the review of the nomination of [the Property] for 30 days to the 10 November 2016 Historical Commission meeting . . . passed unanimously." *Id.*

---

presence of a quorum." R.R. at 444a. Additionally, Section 4.6(e) states, "A majority of the members present at the time of voting, including any members abstaining, is required to adopt a motion." R.R. at 447a.

[3] Section 5.14(a)(2) of the Historical Commission's Regulations states, "Amendment to a description or statement of significance may be made either by revising the existing nomination or by submitting a supplement to the file." R.R. at 458a. In turn, Section 5.14(a)(4) provides, "For an amendment, the Commission, Committee on Historic Designation, and staff shall follow the procedures established in Section 5 of these Rules & Regulations." *Id.*

3

At its November 10, 2016 meeting, the Historical Commission again considered the nomination of the Property for inclusion in the Register. Ultimately, the Historical Commission passed a motion, by a 5 to 3 vote, designating the Property for preservation and inclusion in the Register under Subsections (c) and (d) of Section 14-1004(1), two categories that were not considered separately at the September 2016 meeting. R.R. at 286a. On November 14, 2016, the Historical Commission sent VMDT written notice of the Property's designation and inclusion in the Register. *Id.* at 288a-291a.

On December 12, 2016, VMDT filed an appeal to the trial court seeking to affirm the Historical Commission's votes at the September 2016 meeting, and to reverse the November 2016 designation of the Property for inclusion in the Register. The trial court rejected the City's assertion that it was without jurisdiction to consider the appeal, explaining that under Section 14-1005(1) through (3) of the Philadelphia Code, an owner may not alter, demolish or develop a property without Historical Commission approval after designation. The trial court concluded that VMDT's property rights were directly affected by its designation and the Historical Commission's decision is an appealable decision under the Local Agency Law, 2 Pa. C.S. §§751-754.[4] The trial court also rejected VMDT's assertion that the Historical Commission was without jurisdiction to include the Property in the Register at the November meeting. The trial court explained that the two tie votes at the September meeting were equivalent to a refusal to take action, and that the

---

[4] Section 752 of the Local Agency Law provides, "Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . . ." 2 Pa. C.S. §752. In turn, Section 101 of the Administrative Agency Law defines "adjudication," in relevant part, as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. §101.

rejection of the nomination under Subsections (a), (c), (d), and (j) of Section 14-1004(1) did not preclude a subsequent nomination under just Subsections (c) and (d) at the November meeting because only one criterion is required for the designation under Section 5.11(b) of the Historical Commission's Regulations.[5] VMDT filed the instant appeal of the trial court's order.[6, 7]

In this appeal,[8] VMDT again argues that the Historical Commission was without jurisdiction to add the Property to the Register at the November 2016

[5] *See Kuszyk v. Zoning Hearing Board of Amity Township*, 834 A.2d 661, 665 (Pa. Cmwlth. 2003) ("It is now well settled that, absent a statutory or regulatory provision to the contrary, when an administrative body is equally divided on the outcome of a matter before the body, the tie vote acts as a denial of the requested relief and the subject matter under consideration must remain in status quo."); *Crossgates, Inc. v. Board of Commissioners of Public Grounds and Buildings*, 603 A.2d 276, 278 (Pa. Cmwlth. 1992), *aff'd*, 635 A.2d 1040 (Pa. 1994) ("[I]t is well settled that where a party requests an administrative body to take action on a matter, a tie vote by the body is an equivalent of a refusal to take action.") (citation omitted).

[6] Where the trial court has not taken additional evidence, our review of a local agency decision is limited to determining whether the agency's findings of fact are supported by substantial evidence, an error of law has been committed, or constitutional rights have been violated. *Kujawa v. City of Williamsport*, 445 A.2d 1348 (Pa. Cmwlth. 1982).

[7] The City filed an application to strike a portion of VMDT's brief that contained the minutes of a November 10, 2017 Historical Commission meeting in which it considered a nomination to list the property at 1020-24 Christian Street on the Register. Of relevance here, at that meeting, the City considered a failed motion to designate property as a "decision" of the Historical Commission. By April 7, 2018 order, this Court struck that portion of VMDT's brief because the minutes were not part of the certified record of this appeal. On May 21, 2018, VMDT filed an Application to Remand the matter to the trial court to supplement the record with those minutes and the City has filed a Response in Opposition, arguing that remand for supplementation is not appropriate where there is a complete record in an agency appeal.

[8] As a preliminary matter, the Historical Commission again argues that the trial court was without jurisdiction to consider VMDT's appeal of the November 2016 decision to include the Property in the Register under the Local Agency Law. The Historical Commission contends that the mere designation of the Property does not have the requisite legal effect on VMDT's property rights so that any appeal of the Commission's action was not ripe for judicial review. However,

5

meeting. VMDT explains that the Historical Commission told VMDT at the beginning of the process that "if the Commission declines to designate, its jurisdiction lapses." R.R. at 314a. As noted above, Section 5.11(b) of the Commission's Regulations states that the Commission may designate a nominated property "if the nominated resource satisfies **one or more** of the Criteria for Designation." *Id.* at 457a (emphasis added). VMDT contends that when the Commissioners considered the nomination of the Property at the September meeting, they were evaluating whether the nomination satisfied any one of the criteria outlined in Subsections (a), (c), (d), and (j) because the Commissioner "moved to find that the **nomination** demonstrates that the [Property] satisfies Criteria for Designation A, C, D, and J and to designate it as historic, listing it on the [Register]." *Id.* at 240a (emphasis added). VMDT asserts that, in light of Section 5.11(b), the 5 to 3 vote at the September meeting rejecting the Property's designation must be construed as the Commission's refusal to designate the Property under any of the subsections of Section 14-1004(1) of the Philadelphia Code. As a result, when the

---

contrary to the Historical Commission's assertion, the trial court properly entertained the appeal of the designation of the Property under the Local Agency Law. *See United Artists Theater Circuit, Inc. v. Philadelphia Historical Commission*, 595 A.2d 6, 8 (Pa. 1991), *rev'd on other grounds sub nom. United Artists Theater Circuit, Inc. v. City of Philadelphia*, 635 A.2d 612 (Pa. 1993) ("[The building owner] reacted to the notice of designation by filing a suit in equity and a petition for a preliminary injunction in the [trial court]. [The] suit, inter alia, sought a declaratory judgment that the Commission was without authority to designate its Boyd Theater building as historic. The trial court properly treated the suit and petition as an appeal pursuant to the provisions of the Local Agency Law, 2 Pa. C.S. §752, and the matter was submitted to the lower court upon the record of the meeting before the Commission and the briefs of counsel.") (footnote omitted); *Merriam v. Philadelphia Historical Commission*, 777 A.2d 1212, 1221 n.8 (Pa. Cmwlth. 2001), *appeal denied*, 796 A.2d 319 (Pa. 2002) ("The Pennsylvania Supreme Court's previous approval of an appeal of an historic designation under [the] Local Agency Law in *United Artists* [*Theater Circuit, Inc.*], buttresses our decision. This Court believes that the Supreme Court would have raised the jurisdictional issue had it disapproved of treating the suit under [the] Local Agency Law.").

Commission purported to designate the Property at the November meeting, it did so without jurisdiction.

As outlined above, at the September 2016 meeting, the Historical Commission first failed to approve a motion to reject the nomination outright as a result of a 4 to 4 vote; then failed to designate the Property under Subsections (a), (c), (d) and (j) of Section 14-1004(1) by a 5 to 3 vote; and finally failed to designate the Property under Subsections (a) and (j) as a result of a 4 to 4 vote. R.R. at 240a. Our Supreme Court addressed the implication of a tie vote in *Energy Pipeline Company v. Pennsylvania Public Utility Commission*, 662 A.2d 641 (Pa. 1995). In that case, a natural gas local distribution company (LDC) filed a complaint with the Pennsylvania Public Utility Commission (PUC) challenging the private agreement between third parties for the construction and operation of a pipeline for the transportation and the sale of natural gas, arguing that such constituted the establishment of a public utility in violation of the Public Utility Code, 66 Pa. C.S. §§101-3316. The LDC sought interim relief and an injunction preventing the third party supplier from supplying natural gas until it obtained the PUC's permission to do so. A PUC administrative law judge (ALJ) issued an initial decision denying and dismissing the complaint, but the PUC's Office of Special Assistants (OSA) recommended that the complaint be sustained on consideration of the LDC's exceptions to the initial decision. The matter was then placed on the PUC's agenda for a public meeting and consideration.

At an April 6, 1989 meeting, the PUC Chairman moved to adopt the ALJ's initial decision and to reject the OSA's report. The PUC, consisting of only four members at the time, voted 2 to 2 on the motion. Immediately thereafter, another member made a second motion to reject the ALJ's initial decision and to

7

adopt the OSA's report. The vote again resulted in a 2 to 2 tie. "Accordingly, the [PUC] Chairman declared on the record that the [PUC] had taken 'no action' and the matter was tabled for further consideration at a later time." *Energy Pipeline Company*, 662 A.2d at 643. "Significantly, the [PUC] issued no decisions or orders on the matter, on the record or otherwise." *Id.* The matter was again placed on the PUC's agenda for a public meeting on March 22, 1991, but it was continued. Ultimately, at an October 1, 1992 meeting, the PUC, consisting of only three members, voted unanimously to sustain the complaint. On December 7, 1992, the PUC entered an order to this effect.

Prior to the entry of the PUC's order, the third parties filed an action in this Court's original jurisdiction alleging that the PUC's tie vote at the April 6, 1989 meeting constituted a "final action and a final order" denying the relief requested by the LDC in its complaint thereby divesting the PUC of further jurisdiction and rendering the October 1, 1992 vote and the December 7, 1992 order of no effect. This Court agreed, "holding that the PUC effectively 'affirmed' the decision of the ALJ when the PUC failed to agree to take the action requested by [the LDC] on April 6, 1989." *Energy Pipeline Company*, 662 A.2d at 643. This Court "also found that [the LDC] was required to appeal from the decision of the PUC at the April 6, 1989 meeting," and "[b]ecause [the LDC] did not so appeal," "the ALJ's decision became final and the PUC's December 1992 order was invalid because the PUC had no authority to issue it." *Id.*

On further appeal, the Supreme Court reversed, explaining that "[S]ection 301(d) [of the Public Utility Code, 66 Pa. C.S. §301(d)], provides that a majority of the [PUC] members serving are needed for a quorum and the number needed for the quorum must act *unanimously* for the [PUC] to make any order or to

8

take any action." *Energy Pipeline Company*, 662 A.2d at 643-44 (emphasis in original). "Thus, under [S]ection 301, where there are only four commissioners, three commissioners constitute a quorum, and those three commissioners must vote *unanimously* for the PUC to undertake *any* action. A two-two vote is not a majority to adopt or deny any action." *Id.* at 644 (emphasis in original and footnote omitted). As a result, the Court held that "no action was taken by the PUC at the April 6, 1989 meeting, and therefore the PUC was not prohibited from acting on October 1, 1992." *Id.* at 645.

Accordingly, in this case, the Historical Commission's 4 to 4 tie votes at its September 2016 meeting did not affect its ability to consider further the nomination of the Property for inclusion in the Register at the October 2016 and November 2016 meetings because it took no action through these votes. *See* Section 4.6(e) of the Historical Commission's Regulations, R.R. at 447a ("A majority of the members present at the time of voting, including any members abstaining, is required to adopt a motion.").

With respect to the Commission's 5 to 3 vote to reject the nomination of the Property under Subsections (a), (c), (d) and (j) of Section 14-1004(1) of the Philadelphia Code, the trial court stated the following, in relevant part:

> For the motion advanced by [Commissioner] McCoubrey on September 9, 2016 to have succeeded, however, the Commission would have had to have found that the Property satisfied all four of the proposed criteria: A, C, D **and** J. This motion failed. The vote did not consider any one criteria individually, nor did it consider other groupings of criteria other than all four of the proposed

9

criteria together.[9]  The Commission was still free to consider the criteria for historic designation either individually or in alternative groupings as was done at the November 10, 2016 meeting when the Commission designated the Property as historic under categories (c) and (d).  Thus, the Commission's vote of November 10, 2016 was valid and the Court affirms the Commission's designation of the Property as historic under categories (c) and (d).

Trial Court 8/15/17 Opinion at 5 (emphasis in original and citations omitted).  We discern no error in the trial court's determination in this regard.

As noted above, the Historical Commission may designate the Property based on any "one or more" of the individual subsections outlined in Section 14-1004(1) and Section 5.2 of its Regulations pursuant to Section 5.11(b) of its Regulations.  R.R. at 457a.  Additionally, under Section 5.14(a)(2), the Commission may "[a]mend[] . . . a description or statement of significance . . . by revising the existing nomination."  *Id.* at 458a.  Moreover, Section 5.12 states, "The Commission shall send written notice of the designation as historic . . . to the owner of each separately designated building [or] structure . . . which shall include [the] reason for the designation."  *Id.* at 457a.[10]  Finally, VMDT's argument in this regard ignores the vote at the October 2016 meeting in which the Historical Commission reiterated by a vote of 6 to 3 that it did not intend to reject the nomination of the Property in its entirety at the September 2016 meeting; that the Historical Commission would

---

[9] *See, e.g.*, *Reese Brothers, Inc. v. United States*, 447 F.3d 229, 235-36 (3rd Cir. 2006) ("The usual meaning of the word 'and,' however, is conjunctive, and 'unless the context dictates otherwise, the "and" is presumed to be used in its ordinary sense. . . .'") (citation omitted).

[10] *See also* Section 555 of the Local Agency Law, 2 Pa. C.S. §555 ("All adjudications of a local agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.").

proceed with the review of the nomination; and that consideration of the nomination "will be placed back on the agenda." *Id.* at 257a.

As outlined above, pursuant to its Regulations and in the absence of written notice of designation, the Commission retained the authority to amend the nomination and to approve the designation of the Property for inclusion in the Register on any "one or more" of the bases contained in Section 14-1004(1) of the Philadelphia Code and Section 5.2 of its Regulations. *See, e.g.*, *Pocono Mountain Charter School, Inc. v. Pocono Mountain School District*, 88 A.3d 275, 288-90 (Pa. Cmwlth. 2014) (holding that the initial vote of the State Charter School Appeal Board (CAB) to sustain a charter school's appeal and reverse a school board's decision revoking its charter, which was not reduced to a written decision and order as required by the Charter School Law,[11] was not self-executing and did not constitute a final, appealable action so that the CAB retained jurisdiction to rescind its prior vote, consider the appeal on the merits, and unanimously vote to deny the appeal and affirm the school board's decision revoking the school's charter). As a result, the trial court did not err in affirming the Historical Commission's designation of the Property under the Philadelphia Code and its Regulations and VMDT's claims to the contrary are meritless.[12]

---

[11] Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§17-1701-A – 17-1751-A.

[12] VMDT's constitutional claims are likewise without merit. Any purported due process violation that resulted from the participation of a member of the City's Planning Commission who was also a member of the Historical Commission was cured by his recusal from participating at the September 2016, October 2016, and November 2016 meetings at which the Historical Commission formally considered and voted on the amended nomination. *Oppenheim v. Department of State, Bureau of Professional and Occupational Affairs*, 459 A.2d 1308, 1315-17 (Pa. Cmwlth. 1983). Additionally, VMDT's assertion that its due process rights were violated by the Historical Commission's refusal to disclose the privileged legal advice provided to it by the City's Law Department is patently meritless. Sections 4-400, 5-1104, and 8-410 of the

11

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

Philadelphia Home Rule Charter; *Department of Transportation v. Taylor*, 841 A.2d 108, 114-18 (Pa. 2004). Finally, neither the Historical Commission nor the trial court addressed any of VMDT's remaining constitutional claims. Moreover, VMDT has failed to indicate in its appellate brief where in the record these remaining constitutional issues were raised or preserved for our review as required by Pa. R.A.P. 2117(c) and 2119(e). Accordingly, these issues are waived for purposes of appeal. Section 753(a) of the Local Agency Law, 2 Pa. C.S. §753(a); Pa. R.A.P. 302(a), 1551(a); *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 275-76 (Pa. 2003); *Laundry Owners Mutual Liability Insurance Association v. Insurance Commissioner of Pennsylvania*, 91 A.3d 747, 753 (Pa. Cmwlth. 2014); *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997).

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

VMDT Partnership,                        :
                                         :
                    Appellant            :
                                         :
          v.                             :   No. 1277 C.D. 2017
                                         :
City of Philadelphia                     :
Historical Commission                    :


O R D E R


AND NOW, this 9th day of July, 2018, the order of the Philadelphia County Court of Common Pleas dated August 14, 2017, at December Term, 2016 No. 01201 is AFFIRMED. The Application to Remand is DISMISSED as moot.


_____
MICHAEL H. WOJCIK, Judge