603 A.2d 276

CROSSGATES INCORPORATED, Petitioner,

v.

BOARD OF COMMISSIONERS OF PUBLIC GROUNDS AND
BUILDINGS; Catherine Baker Knoll, State Treasurer, as a
Member of the Board of Commissioners of Public Grounds
and Buildings; Michael J. Hershock, Secretary of the Budget
and designee of the Governor of the Commonwealth of Penn-
sylvania to serve as a Member of the Board of Commissioners
of Public Grounds and Buildings; and, Department of Gener-
al Services of the Commonwealth of Pennsylvania, Respon-
dents.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Jan. 31, 1992.

Reargument Denied Feb. 27, 1992.

Edward B. Friedman, for petitioner.

Mark L. Alderman, for respondents.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

On May 11, 1989, the Department of General Services (DGS) advertised a notice for proposals for 100,000 square feet of lease office space in Pittsburgh for use by the Department of Public Welfare (DPW).[1] In response to the aforementioned notice, Crossgates Incorporated (Crossgates) obtained a solicitation package # 090104 [2] and thereafter submitted a proposal providing 100,000 square feet of office space by renovation of three existing buildings situated at 945–947–949 Penn Avenue (collectively Penn Avenue Buildings.)

On various occasions between September 22, 1989 and December 15, 1989, representatives from Crossgates met with representatives of DGS, DPW and the unions representing the DPW employees to review the details of the proposal and to inspect the Penn Avenue Buildings. On January 9, 1990, Crossgates received a letter from the Acting Director of DGS'S Bureau of Real Estate notifying it that its proposal had been selected as best meeting the Commonwealth's space requirements. The letter further informed Crossgates that its proposal had obtained preliminary Commonwealth approval and that the Bureau of Real Estate was prepared to process a lease agreement. The letter also stated that preliminary Commonwealth approval

1. The reason for the solicitation of proposals was to consolidate five existing DPW district offices into one central downtown location.

2. Solicitation package # 090104 included, *inter alia,* the project specifications, space requirements and a sample lease.

does not constitute a firm commitment to lease space but rather merely evidences an intention of working towards a formal lease agreement objective. "A formal lease agreement is one that has received all necessary signatures and approvals, such as the approval of the Board of Commissions of Public Grounds and Buildings and signature of the Secretary of General Services, and received by you." The letter further reminded Crossgates that the Commonwealth accepts no responsibility or liability for any costs whatsoever that it may encounter in formalizing the proposed lease agreement.

On January 30, 1990, a representative of Crossgates met with representatives from the Bureau of Real Estate, the DPW and the Treasury Department to discuss finalization of the legal and economic terms of the proposed lease. During the next seven months, representatives from Crossgates and DGS reached agreement on the proposed lease which was then placed on the Board of Commissioners of Public Grounds and Buildings (Board) September 12, 1990 agenda.

Pursuant to Section 446 of the Administrative Code of 1929 [3] (Administrative Code) the Board consists of three members: the Governor; the Treasurer; and the Auditor General or their respective designees. 71 P.S. § 156. However, by reason of this Court's decision in *Jannetta v. Knoll*, 129 Pa.Commonwealth Ct. 458, 566 A.2d 330 (1989), *aff'd per curiam*, 527 Pa. 358, 591 A.2d 1052 (1991), the Auditor General or her designee is precluded from serving on the Board. The Board is presently composed of two members: Catherine Baker Knoll (Knoll), the Treasurer and Chairperson of the Board; and Michael H. Hershock (Hershock), Secretary of the Budget as designee of the Governor.

At the Board's September 12, 1990 meeting, all interested persons were afforded the opportunity to express their opinions regarding whether or not the Board should approve or disapprove the proposed lease. After the conclu-

3. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51–732.

sion of the discussion regarding the proposal, Hershock voted to approve and Knoll voted to disapprove Crossgates' proposed lease. No further action regarding the lease was taken.

On July 15, 1991, Crossgates filed a petition for review naming the Board, DGS, Hershock and Knoll as respondents (collectively Respondents) in an action for declaratory judgment. Crossgates seeks, *inter alia*,[4] a determination as to the legal effect of a split or tie vote by the two members of the Board.

On August 5, 1991, Crossgates moved for summary relief and expedited consideration. The Respondents thereafter filed a joint preliminary objection in the nature of a demurrer asserting that the petition for review failed to state a cause of action upon which relief may be granted.[5] In the brief in support of the preliminary objection, the Respondents maintain that there is no need for declaratory relief in that Crossgates' claim is meritless since, as a matter of law, there is no uncertainty as to the legal effect of a tie vote by administrative bodies. We agree.

■■■ Our research has revealed no case law with respect to split or tie votes by this Board. However, it is well settled that where a party requests an administrative body to take action on a matter, a tie vote by the body is an equivalent of a refusal to take action. *AT & T Communications of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 131 Pa.Commonwealth Ct. 390, 570 A.2d 612 (1990). In zoning hearing board cases, equally divided votes have been construed by this Court to consti-

---

4. Crossgates also seeks a declaration that Knoll acted arbitrarily, capriciously, illegally and in bad faith in rejecting the proposed lease. Crossgates further seeks injunctive relief which would preclude DGS from taking any further action regarding lease proposals for office space to be used by DPW in Pittsburgh. Crossgates also requests that this Court direct the DGS to execute the lease.

5. Respondents also raised by way of preliminary objection that the petition for review should be dismissed because it was jurisdictionally defective and untimely, Crossgates lacked standing, and the lack of a justiciable case or controversy. Respondents also filed motions to strike for lack of conformity to the rules and impertinent matter.

tute a denial of the action requested from the board, rather than the absence of a decision. *Bene v. Zoning Hearing Board of Windsor Township,* 121 Pa.Commonwealth Ct. 380, 550 A.2d 876 (1988); *Giant Food Stores, Inc. v. Zoning Hearing Board of Whitehall Township,* 93 Pa.Commonwealth Ct. 437, 501 A.2d 353 (1985). Likewise, the Superior Court has determined that a tie vote of an administrative body constitutes a refusal of the action requested from it. *Pennsylvania Publications, Inc. v. Pennsylvania Public Utility Commission,* 152 Pa.Superior Ct. 279, 32 A.2d 40 (1943), *reversed on other grounds,* 349 Pa. 184, 36 A.2d 777 (1944).

At oral argument, Crossgates' counsel specifically requested that this Court, pursuant to the Declaratory Judgments Act,[6] interpret the portion of Section 2413 of the Administrative Code which provides that the Board has the power and the duty "to *approve or disapprove* all proposed leases for offices, rooms, and accommodations...." (emphasis added), 71 P.S. § 643. Crossgates contends that inaction by the Board, in the purported form of a tie or split vote, is not the equivalent of a decision to approve or disapprove a proposed lease. Crossgates seeks a declaration that the action taken by the Board in disapproving the proposed lease is null and void and also seeks a declaration that their proposed lease is approved.

Section 1905 of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. § 1905, provides that:

(a) [w]ords in a statute conferring a joint authority upon three or more public officers or other persons shall be

6. The stated purpose of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. 42 Pa.C.S. § 7541(a). Section 7533 of the Act provides in pertinent part:
> Any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder. 42 Pa.C.S. § 7533.

The Act is remedial in nature and is to be liberally construed and administered. 42 Pa.C.S. § 7541(a).

construed to confer authority upon a majority of such officers or persons.

(b) [a] majority of any board or commission shall constitute a quorum.

Thus, pursuant to Section 1905 of the Act and Section 2413 of the Administrative Code, the Board is authorized to approve or disapprove a proposed lease by the majority vote of its members.[7]

As was aptly stated by Judge Wieand, now of the Superior Court, in *Walnut Realty, Inc. v. Zoning Hearing Board,* 37 Leh.L.J. 119 (1976) and reiterated by this Court when construing a statutory zoning appeal in *Giant Food,*

[w]hen a legal or semi-legal tribunal consists of only two members, neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two ...

93 Pa.Commonwealth Ct. at 442, 501 A.2d at 356.

It is undisputed that Hershock voted to approve the lease and Knoll voted to disapprove; no further action was taken regarding the lease. The equally divided vote of the Board constituted a disapproval of the proposed lease rather than an absence of a decision. *See Bene,* 121 Pa.Commonwealth Ct. 380, 550 A.2d 876 (1988).

Having determined that the Board disapproved Crossgates' proposed lease, we sustain Respondent preliminary objection in the nature of a demurrer.[8] Our disposition herein is also determinative of Crossgates' motion for summary relief.

## ORDER

AND NOW, this 31st day of January, 1992, it is hereby ORDERED:

7. Our decision in *Jannetta* does not undermine the authority conferred upon the Board or its ability to perform its functions.

8. In light of our disposition of the Respondents' preliminary objection in the nature of a demurrer we need not address the remaining preliminary objections.

1) Respondents' preliminary objection, in the nature of a demurrer, for failure to state a cause of action upon which relief may be awarded, is sustained and Crossgates' petition for review, in the nature of an action for declaratory judgment, is dismissed; and

2) Crossgates' motion for summary relief is denied.