IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert P. Grim, Jane C. Grim, Shannon : 
M. Crowe, Alexander G. Crowe, : 
Stephen J. Demchyk, Barbara K. : 
Demchyk, John C. Zima, Darrell L. : 
Browning, Diane Dudley, Kenneth P. : 
Franke, Anne H. Franke, Dean Haas, : 
Helen A. Wanamaker, Dwight S. : 
Wanamaker, and Laurel L. Burkhardt, : 
              Appellants : 
                        : 
             v. : 
                        : 
Maxatawny Township Board of : 
Supervisors, Duke Realty Limited : 
Partnership, Charles E. Wessner, : 
Carol J. Wessner, Cynthia K. Schlegel, : 
Pollyanna G. Hartman, Kathy Karpeuk, : 
Robert M. Skrip, Linda Skrip, Roy : 
Wessner, Dale Wessner, Jenni Reinhard, :   No. 1452 C.D. 2021
and Jeremy Reinhard :   Argued: December 14, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge


OPINION
BY JUDGE FIZZANO CANNON        FILED:  April 6, 2023


        Robert P. Grim, Jane C. Grim, Shannon M. Crowe, Alexander G.

Crowe, Stephen J. Demchyk, Barbara K. Demchyk, John C. Zima, Darrell L.

Browning, Diane Dudley, Kenneth P. Franke, Anne H. Franke, Dean Haas, Helen

A. Wanamaker, Dwight S. Wanamaker, and Laurel L. Burkhardt (collectively Objectors) appeal from an order of the Berks County Court of Common Pleas (trial court) affirming a development approval by the Maxatawny Township (Township) Board of Supervisors (Board). Upon review, we vacate and remand to the trial court with a directive to vacate and remand the Board's decision.

## I. Background

In May 2020, Duke Realty Limited Partnership (Duke) proposed a development plan (Plan) within the Township[1] for warehouse/distribution facilities with a combined area of 1.6 million square feet on lots zoned for light industrial (LI) use. Duke is the equitable owner of 11 combined parcels comprising the site. The site is bounded by Kutztown Road (State Route 222) to the south, Long Lane Road (State Route 1024) to the east, and Hilltop Road to the south and west. Hottenstein Road goes through the site and would be realigned. The Plan anticipates operations 24 hours a day, 7 days a week, with 1600 employees, 1800 parking spaces for tractor-trailers, and 985 car parking spaces. A transportation impact study estimated 7,000 trips per day to and from the site, including about 5,000 car trips and about 2,000 tractor-trailer trips.

An environmental study projected the site would provide its own water through wells Duke would construct. The study did not address impact on the aquifer and watershed that serve the Township and neighboring localities, and the Township's engineer initially found the Plan noncompliant. The Plan would also

---

[1] The Township is about 26 square miles and had an estimated population of 6,873 as of 2021. *See* https://www.census.gov/quickfacts/maxatawnytownshipberkscountypennsylvania (last visited Mar. 20, 2023). It has a large rural and agricultural Mennonite component that travels the roads by bicycle and sometimes by horse and buggy. *See* https://www.nytimes.com/2021/05/26/business/lehigh-valley-warehouses-ecommerce.html (last visited Apr. 5, 2023).

cause the Township's sewage facilities to reach capacity within five years, requiring an expansion that Duke promised to construct and dedicate to the Township. The Township engineer ultimately recommended approval of the Plan conditioned on that expansion as well as ongoing monitoring and compliance with all issues prior to final approval.

The Board's members during the relevant time period were Heath Wessner (Wessner), Allen Leiby (Leiby), and Judy Daub (Daub). Wessner owned two parcels subject to purchase agreements with Duke as part of the site for the Plan. Leiby's son-in-law, Jeremy Reinhard (Reinhard), and sister, Grace Haas (Haas), also owned parcels subject to purchase agreements with Duke, although Haas's parcel was not directly part of the site.

The Township solicitor sought advice from the Pennsylvania State Ethics Commission (Commission) regarding Leiby's ability to vote on the Plan. The Commission advised that Haas's interest in the Plan through her agreement with Duke would create a conflict of interest for Leiby, as Haas is Leiby's immediate family member. Reproduced Record (RR) at 203a-11a.

The record does not reflect any inquiry with the Commission regarding Wessner's conflict. Nonetheless, Wessner abstained from all discussion and action on the Plan. Thus, abstention by Leiby would leave only one voting Supervisor, rendering the Board unable to act at all on the Plan. Accordingly, based on Section 1103(j) of the Public Official and Employee Ethics Act (Ethics Act),[2] 65 Pa.C.S. § 1103(j), which codified the common law Rule of Necessity,[3] the Commission

---

[2] 65 Pa.C.S. §§ 1101-1113.

[3] Under the Rule of Necessity, if all members of a tribunal, or so many that there is not a quorum, are subject to recusal, the tribunal must consider the case despite the conflicts of its members, where otherwise the agency could not carry out its duties and the litigants would be

advised that Leiby could vote on the Plan as long as he disclosed his conflict and did not engage in discussions or advocacy for the Plan. RR at 203a-11a.

Meanwhile, objections arose over the Plan site's proximity to several properties, including the parcel owned by Leiby's sister, Haas, which contained residential structures, as well as a church property containing a playground. *See, e.g.*, RR at 8Ma,[4] 8Na, 30a-31a, 439a. Section 593(c) of the Township's Zoning Ordinance prohibits warehousing within 500 feet of "adjacent property containing a residential dwelling [or] playground . . . ." MAXATAWNY TWP., PA., ZONING CODE (Zoning Ordinance), § 593(c) (2012). Duke did not secure any variance for the Plan from the Zoning Board. The Zoning Officer issued a letter in April 2021 stating that the Plan proposed a use that is permitted by right per Section 407.1(c) of the Zoning Ordinance.

In June 2021, after a hearing, the Board voted 2-0 to preliminarily approve the Plan, with Leiby and Daub voting in favor and Wessner abstaining.[5] Conditions included payment of a $1.3 million traffic impact fee and $600,000 for road improvements, considerate placement of a traffic roundabout (including accessibility and safety of horses & buggies), water treatment and sewage upgrades, and consent to monitoring of groundwater levels.

Objectors appealed to the trial court. Duke intervened. The trial court upheld the Board's approval, finding that the Board's approval of the Plan was

denied a decision. *Wells v. Unemployment Comp. Bd. of Rev.*, 236 A.3d 108, 111 (Pa. Cmwlth. 2020) (additional citations omitted).

[4] The page numbering in parts of the reproduced record does not comply with the requirements of Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173. Numbering here conforms to that used in the reproduced record, for clarity and ease of reference.

[5] Leiby is no longer in office and has been replaced by John A. Deplanque (Deplanque). *See* http://www.maxatawny.net/supervisors.html (last visited Apr. 5, 2023).

4

supported by substantial evidence. The trial court observed that warehouses are permitted by right in the LI district and have been operating in it for years. Relying on the Commission's opinion and Section 1103(j) of the Ethics Act, the trial court found no due process violation arising from Leiby's vote to preliminarily approve the Plan.

Objectors contended that the Board misinterpreted the Zoning Ordinance's restriction that a warehouse shall be no closer than 500 feet from any adjacent property containing a residential dwelling. *See* Zoning Ordinance, § 593(c). The trial court construed that provision as referring to the distance between a warehouse and residential buildings rather than between lots. In its opinion issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (1925(a) Opinion), the trial court concluded the provision was ambiguous and deferred to the Board, which had relied on the Zoning Officer's interpretation that the correct measure was building-to-building. 1925(a) Opinion at 4-5. Based on that interpretation, the trial court implicitly concluded that no variance was needed based on the location of a residence on Haas's property.[6] *Id.*

Objectors also contended that the Board should have required Duke to secure a special exception for warehousing activity from the Township's Zoning Hearing Board before approving the Plan. The trial court concluded that no special exception was necessary because warehouses are permitted by right in the LI district.

---

[6] The trial court did not address the issues raised regarding the site's proximity to other residences and a church playground. *See generally* 1925(a) Opinion.

The Plan also stated that graves in a historically significant burial site on the property were to be disinterred and relocated. In January 2021, living descendants of those buried in the cemetery sued Duke. That matter purportedly settled in September 2021 with the burial site to remain in place pursuant to an order of the Berks County Orphans' Court. RR at 947a-48a.

The trial court likewise rejected Objectors' argument that the proposed warehouses would be contrary to the area's health, safety, and welfare. The trial court dismissed these as general allegations devoid of support through expert testimony and noted that the approval is still only conditional at this time.

Objectors then appealed to this Court.

## II. Issues

On appeal,[7] Objectors first raise due process concerns regarding impartiality of the vote to approve the Plan. Objectors observe that two of the three Township Supervisors were conflicted by property interests with Duke, but that one of the conflicted Supervisors still voted for preliminary approval. Objectors posit that the Rule of Necessity, as codified in the Ethics Act, was either inapplicable or unconstitutional as applied here. Objectors suggest that no necessity existed to allow a conflicted Supervisor to vote; instead, Duke should have simply found another site where there were no conflicts. Objectors ask this Court to void the Township's preliminary Plan approval.

Next, Objectors assert that the Board wrongly failed to require Duke to obtain special exceptions and variances before preliminary approval of the Plan. Objectors maintain that the Zoning Ordinance unambiguously forbids locating a warehouse property within 500 feet of a property containing a residential structure. They assert that Haas's property, which is not directly part of the parcels comprising the Plan site, contains a residential structure and is within 500 feet of the Plan site.

[7] "Where the trial court takes no additional evidence, our review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion." *Berner v. Montour Twp.*, 120 A.3d 433, 436 n.5 (Pa. Cmwlth. 2015) (citing *Robal Assocs., Inc. v. Bd. of Supervisors of Charlestown Twp.*, 999 A.2d 630 (Pa. Cmwlth. 2010) (*en banc*)).

6

Thus, Objectors contend that Duke must obtain a variance in order to gain approval of the Plan.

Regarding a special exception, Objectors argue that the Zoning Ordinance contains conflicting provisions. One provision of the Zoning Ordinance allows warehousing and distribution as a permitted use in the LI district; another provision requires a special exception from the Township's Zoning Hearing Board for warehousing activity or warehouse facility. The Zoning Ordinance expressly provides that in case of a conflict in its provisions, the more restrictive provision applies. Therefore, Objectors posit that Duke had to obtain a special exception for the use proposed in the Plan.[8]

Finally, Objectors suggest that the Board wrongly ignored health, welfare, and safety issues by preliminarily approving the Plan despite its probable significant adverse impact on traffic, water, and sewer resources. Objectors assert that Duke failed to offer substantial evidence of the Plan's feasibility concerning traffic, water, and sewer provisions and that, moreover, the Board capriciously disregarded evidence of unfeasibility. Further, Objectors contend that the Board should not have granted preliminary approval without conditioning that approval on procurement of necessary permits from government agencies. Thus, Objectors maintain that the Board abused its discretion by granting preliminary approval to a plan that contained too many variables and not merely minor defects.

---

[8] Objectors also asserted error regarding provisions relating to the burial ground located on the site, but as noted above, that issue was settled in separate litigation. Accordingly, we do not address it here.

7

## III. Discussion

### A. Conflicts of Interest and the Ethics Act

The parties do not dispute that both Wessner and Leiby had conflicts of interest that would normally have precluded both of them from discussing, advocating, or voting on the proposed Plan. Rather, the parties disagree on the propriety of allowing Leiby to vote on the Plan notwithstanding his conflict.

Objectors insist that the trial court's decision to let stand a vote by a conflicted Supervisor erodes public trust by failing to stop potential collusion between developers and local land use officials who may vote on applications by those developers. Objectors posit that the abuse is especially egregious here, because Duke's application downplayed the necessity for its acquisition of the parcel owned by Leiby's sister. Objectors suggest that the Rule of Necessity codified in the Ethics Act dates from a time when cases could not easily be reassigned, and when enacted, the Ethics Act contemplated the classic instance of two adversaries and a single judge. According to Objectors, the rule should be reconsidered; it should not be applied to land use matters where there is only an applicant and a majority of conflicted adjudicators, with Objectors powerless on the sidelines while the applicant and adjudicator both benefit from self-created conflicts of interest.

Objectors acknowledge that Section 508(3) of the Pennsylvania Municipalities Planning Code (MPC),[9] 53 P.S. § 10508(3), provides that the inaction of the local land use authority on an application will result in approval by operation of law. Thus, inability to obtain a quorum vote could deprive the parties of an adjudication. However, Objectors contend that where, as here, the reason for the inaction is a conflict that should disqualify a majority of the adjudicators on the

---

[9] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

8

application, due process concerns should bar application of that provision because the result would be unjust and absurd. Objectors assert that when the statutory remedy, such as allowing the vote to stand pursuant to the MPC, will violate due process and bring an unjust result, a common law remedy is appropriate. Here, Objectors reason that because the conflict negated a majority of the Board's ability to act, Duke's application should have been deemed denied, as it would have been had there been only two voting supervisors and a tie resulted. *See Crossgates Inc. v. Bd. of Comm'rs*, 603 A.2d 276, 278 (Pa. 1992) (treating tie vote as deemed denial rather than failure to act).

> Subsection 1103(j) of the Ethics Act provides:
>
> (j) Voting conflict.--*Where voting conflicts are not otherwise addressed by the Constitution of Pennsylvania* or by any law, rule, regulation, order or ordinance, the following procedure shall be employed. Any public official or public employee who in the discharge of his official duties would be required to vote on a matter that would result in a conflict of interest shall abstain from voting and, prior to the vote being taken, publicly announce and disclose the nature of his interest as a public record in a written memorandum filed with the person responsible for recording the minutes of the meeting at which the vote is taken, provided that *whenever a governing body would be unable to take any action on a matter before it because the number of members of the body required to abstain from voting under the provisions of this section makes the majority or other legally required vote of approval unattainable, then such members shall be permitted to vote if disclosures are made as otherwise provided herein . . . .*

65 Pa.C.S. § 1103(j)[10] (emphasis added). Objectors argue that this provision is inapplicable here because the due process requirement of the Remedies

---

[10] Both Wessner and Leiby disclosed their conflicts of interest. RR at 380a, 386a, 389a.

9

Clause of the Pennsylvania Constitution, article I, section 11,[11] was violated by allowing Leiby to vote.

This Court disagrees with Objectors' due process argument. The Remedies Clause, on which Objectors rely, guarantees a remedy for every injury "by due course of law . . . ." Pa. Const. art. I, § 11. Contrary to Objectors' argument, the Ethics Act furthers, rather than thwarts, that guarantee. Applying the Ethics Act here provides Duke with a remedy by allowing the Board to adjudicate the preliminary Plan rather than forcing the deemed denial Objectors seek.

We likewise disagree with Objectors' suggestion that we should reconsider the Rule of Necessity as codified in the Ethics Act. Although the Rule of Necessity is a creature of the common law, the Ethics Act is a legislative enactment. Thus, only the legislature can reconsider the wisdom of Section 1103(j). *See Holland v. Marcy*, 883 A.2d 449, 456-57 (Pa. 2005) (stating that "[the] Court may not amend [a] statute but instead must examine the statute as drafted by the legislature").

Nonetheless, we agree with Objectors that the vote as conducted was improper. Although we conclude that Leiby acted properly by voting on the Plan's preliminary approval, we discern no legal basis for precluding Wessner from voting likewise. Both Leiby and Wessner had conflicts of interest. Abstention by both of

---

[11] The provision of the Pennsylvania Constitution knows as the Remedies Clause provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11.

10

them would have left the Board without a quorum. Therefore, both were equally required to vote under Section 1103(j) of the Ethics Act. We find nothing in the record to justify one of two conflicted Supervisors in voting but not the other. Under the circumstances of this case, all three Supervisors should have voted. *See* 65 Pa.C.S. § 1103(j) (mandating that where the number of abstaining members results in the absence of a quorum, "then *such members* shall be permitted to vote . . . ") (emphasis added); *Siteman v. City of Allentown*, 695 A.2d 888, 891 (Pa. Cmwlth. 1997) (*en banc*) (concluding that where multiple recusals left insufficient city council members to constitute a quorum to hear an employment case, the Rule of Necessity required a determination by the entire city council). Accordingly, we conclude that a remand is required in order for the vote to be conducted properly.[12]

## B. Variances and Special Exception
### 1. Variance Requirement

Section 593(c) of the Zoning Ordinance states that a warehouse property "shall be located no closer than 500 feet from any adjacent property containing a residential dwelling, school, day-care facility, park, playground, library, hospital, nursing, rest, or retirement home, or medical residential campus." Zoning Ordinance, § 593(c). The Zoning Ordinance defines "adjacent" as "[t]he state of

---

[12] We recognize, however, that Leiby is no longer a Supervisor and that his replacement, Deplanque, appears to be unconflicted. If so, there will be a quorum to vote on the preliminary Plan on remand without Wessner's vote, rendering Section 1103(j) of the Ethics Act inapplicable. Further, this Court has previously determined that a conflicted official may not vote to break a tie. *See Koslow v. Commonwealth*, 540 A.2d 1374, 1376 (Pa. Cmwlth. 1988) (concluding that a vote was "illegal and void and could not be counted in computing a quorum or majority" where a conflicted township commissioner broke a 2-2 tie in his own favor on whether he should be appointed to the township's municipal authority). Therefore, in the event that a tie vote of the two unconflicted Supervisors occurs on remand, the result will be a deemed denial of the preliminary Plan. *See Crossgates Inc. v. Bd. of Comm'rs*, 603 A.2d 276, 278 (Pa. 1992).

11

being side by side, next to or adjoining one another." Zoning Ordinance, § 202; RR at 570a.

Duke, the Board, and the trial court found Section 593(c) ambiguous and deferred to the Township's Zoning Officer, whose determination they read as concluding that there must be at least 500 feet between warehouse buildings and residential dwellings on lots adjacent to the warehouse lot. Objectors maintain Section 593(c) is clear and that the 500-foot distance means from property to property, not building to building, meaning that the warehouse lot must be at least 500 feet from any lot with a residential dwelling.

We agree with Objectors that the trial court erred in ruling this provision was ambiguous and rewriting it to refer to the distance from building to building rather than property to property. Section 593(c) expressly states that the distance is to be between *properties*, not between buildings. The Zoning Ordinance's use of the word "containing" further supports that meaning, in that properties contain buildings, but buildings do not contain properties. We further observe that the Zoning Officer, who advised that the residential dwelling on Haas's property had to be demolished in order for the Plan to be in compliance with the Zoning Ordinance, did not specifically indicate that the violation arose from a distance of less than 500 feet between the warehouse buildings and the residential dwelling rather than from property to property. We conclude that Section 593(c) is not ambiguous in meaning that the issue is distance between properties rather than buildings on those properties.

We agree with Objectors that the Plan, as approved, violates Section 593(c)'s buffer distance requirement. Although the residence on Haas's property purportedly either has been or will be demolished so as to eliminate the 500-foot

12

proximity issue relating to that residence, the record does not indicate that the alleged proximity of other residences or the church playground was resolved. Therefore, Duke should have been required to obtain variances before approval of the Plan. On remand, the Board shall assure that Duke has obtained any requisite variances before a new vote is conducted on the Plan.

## 2. Special Exception Requirement

Section 508(4) of the MPC requires that local authorities ensure that, before preliminary approval is given to an application where a conditional use or special exception is involved, all necessary information has been provided, because final approval is generally automatic unless a final plan differs significantly from a preliminary plan. *See* 53 P.S. § 10508(4); *Weiser v. Latimore Twp.*, 960 A.2d 924, 929 (Pa. Cmwlth. 2008) (quoting Section 508(4) and stating that "[t]he MPC provides that an applicant with approval of its preliminary plan is entitled to final approval").

Here, Objectors insist that the Plan required a special exception for Duke's proposed use of the site for a warehouse and distribution facility. Therefore, Objectors maintain that the Board should not have granted preliminary approval.

Section 407.1(c) of the Zoning Ordinance permits as a principal use in the LI district "Wholesaling, Warehousing and Distribution, excluding storage & sale of lumber, ice, coal and petroleum or other fuels subject to Section 593 of this Ordinance." Zoning Ordinance, § 407.1(c). Section 407.3(e), however, requires a special exception issued by the Zoning Hearing Board for "Warehousing Activity and/or Facility subject to Section 593 of this Ordinance." *Id.*, § 407.3(e). Thus, although Section 407.1 of the Ordinance allows warehousing by right in the LI

13

district, Section 407.3 requires a special exception for warehousing activity and/or a warehousing facility. The absence of the word "distribution" from Section 407.3 while it appears in Section 407.1 does not mean that Duke was excused from securing a special exception. The Zoning Ordinance defines "distribution" as "[s]torage, transfer, and supply of products and materials." Zoning Ordinance, § 202; RR at 585a. Distribution is part of warehousing as a whole; the Zoning Ordinance defines a "warehouse" as "[a] building or group of buildings primarily used for the commercial storage, transfer, and distribution of products and materials." Zoning Ordinance, § 202; RR at 617a. Sections 407.1 and 407.3 plainly conflict.

Pursuant to Section 107 of the Zoning Ordinance, "[i]f a discrepancy exists between any regulations contained within this [Zoning] Ordinance, that regulation which imposes the stricter limitation on the proposed use or structure shall apply." Zoning Ordinance, § 107; RR at 567a. Here, therefore, any proposed warehousing in the LI district requires a special exception from the Zoning Hearing Board. Therefore, the Zoning Officer erred and the Board violated the Zoning Ordinance by failing to require Duke to secure a special exception before granting preliminary approval. Accordingly, the Board erred by approving the preliminary Plan without requiring Duke to first obtain a special exception.

## C. Health, Safety, and Welfare Concerns

In their final argument, Objectors contend that the Plan does not comport with the health, safety, and welfare of the community and that the Board abused its discretion and capriciously ignored evidence of these negative impacts as well as the Ordinance's stated purpose of preserving the Township's rural character. Objectors maintain that the Plan, including the proposed 7,000 vehicle trips per day,

14

will overwhelm the surrounding roads, which are already at 95% or greater capacity. Further, Objectors assert that the Plan will overwhelm the Township's water and sewage capacity. Objectors maintain that the Board overstretched the limited extent to which preliminary approval can be based on incomplete information regarding these crucial matters. They posit that if outright reversal is not warranted, the matter should at least be vacated and remanded for the trial court to take evidence as needed.

As discussed above, this Court concludes that a remand to the Board is necessary based on the Board's errors addressed in Sections A and B of this opinion. Accordingly, we do not reach these additional issues raised by Objectors. The Board may consider them, if appropriate, on remand.

## IV. Conclusion

Based on the foregoing discussion, we vacate the trial court's order and remand this matter for a remand to the Board for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Wallace did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert P. Grim, Jane C. Grim, Shannon : 
M. Crowe, Alexander G. Crowe, :
Stephen J. Demchyk, Barbara K. :
Demchyk, John C. Zima, Darrell L. :
Browning, Diane Dudley, Kenneth P. :
Franke, Anne H. Franke, Dean Haas, :
Helen A. Wanamaker, Dwight S. :
Wanamaker, and Laurel L. Burkhardt, :
               Appellants :
                :
         v. :
                :
Maxatawny Township Board of :
Supervisors, Duke Realty Limited :
Partnership, Charles E. Wessner, :
Carol J. Wessner, Cynthia K. Schlegel, :
Pollyanna G. Hartman, Kathy Karpeuk, :
Robert M. Skrip, Linda Skrip, Roy :
Wessner, Dale Wessner, Jenni Reinhard, :   No. 1452 C.D. 2021
and Jeremy Reinhard :

## O R D E R

      AND NOW, this 6th day of April, 2023, the order of the Court of Common Pleas of Berks County is VACATED and this matter is REMANDED to the trial court. On remand, the trial court is directed to vacate the decision of the Maxatawny Township Board of Supervisors (Board) and remand to the Board for further proceedings consistent with the foregoing opinion.

      Jurisdiction relinquished.

 

_____
CHRISTINE FIZZANO CANNON, Judge