IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexia and Lawrence McKnight, :
                              Petitioners :
 :
           v. :
 :
Public Utility Commission, : No. 1253 C.D. 2019
                  Respondent : Submitted: January 5, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge


OPINION BY
JUDGE FIZZANO CANNON                        FILED: March 20, 2024


      Alexia and Lawrence McKnight (McKnights), *pro se*, filed a petition for review (Petition) of a final order (Final Order) of the Pennsylvania Public Utility Commission (PUC) dated August 8, 2019, requiring the McKnights to accept installation of an advance metering infrastructure electric meter, or smart meter, at their residence. Disposition of the Petition was stayed pending our Supreme Court's decision in a group of consolidated appeals addressing substantially similar issues. The Supreme Court filed that decision in 2022. *See Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975 (Pa. 2022). Thereafter, the parties in this case were directed to file additional briefs but requested and were granted leave to refrain from doing so. This case is therefore ready for this Court's review on the original briefs. Upon review, we conclude that our Supreme Court's decision in *Povacz* has disposed of most issues the McKnights have raised before us and that the remaining issues are waived and/or lack merit. Accordingly, we affirm the Final Order.

## I. Background

The Act of October 15, 2008, P.L. 1592, No. 129 (Act 129) amended the Public Utility Code[1] to require that electric distribution companies (EDCs) furnish smart meters to their customers. *See* Section 2807(f) of the Public Utility Code, 66 Pa.C.S. § 2807(f). Pursuant to Act 129, the PUC issued an order in 2009 directing EDCs to install smart meters according to a depreciation schedule not to exceed 15 years in duration.

The McKnights filed a formal complaint with the PUC regarding the installation of a smart meter at their residence by their EDC, PECO Energy Company (PECO).[2] Like a number of other PECO customers, the McKnights expressed concerns about adverse health effects of exposure to radiofrequency (RF) fields or electromagnetic fields (EMFs)[3] from smart meters. PECO refused any disability accommodation to allow the McKnights to use an analog meter instead of a smart meter.

Following evidentiary hearings in 2018, an administrative law judge (ALJ) issued an initial decision to which both PECO and the McKnights filed exceptions. In its opinion (Opinion) accompanying the Final Order, the PUC addressed each of the McKnights' exceptions to the ALJ's decision.

First, the PUC concluded that the McKnights were required to prove by a preponderance of the evidence that PECO caused the health effects alleged in the complaint and thereby violated a provision of the Public Utility Code, a PUC regulation or order, or a PUC-approved tariff. The PUC also observed that an ALJ's

---

[1] 66 Pa.C.S. §§ 101-3316.

[2] PECO is an intervenor in this proceeding.

[3] These two terms were used interchangeably before the PUC.

decision must be supported by substantial evidence. The PUC rejected the McKnights' assertions of alternate burdens of proof and determined that the ALJ had applied the correct burdens in ruling on their complaint. The PUC opined that the mere existence of a body of inconclusive scientific evidence suggesting a connection between RFs from smart meters and alleged harm to human health cannot satisfy the requisite burden of demonstrating, by a preponderance of the evidence, a conclusive causal connection between RFs and existing or future harm to human health. The PUC acknowledged that Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501, which requires EDCs to provide safe and reasonable electric service,[4] may be violated where a complainant can prove adverse health effects from RFs. However, the PUC declined to alter the established burden of proof in the absence of scientific consensus on the effects of exposure to RFs.

In a related determination, the PUC rejected the McKnights' argument that they had met their burden of proof by demonstrating both potential harm from the smart meter and a temporal connection between the installation of the smart meter and the appearance of their alleged physical symptoms. After summarizing both sides' evidence, the PUC noted the ALJ's finding that Alexia McKnight had

---

[4] Section 1501 of the Public Utility Code provides:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public.

66 Pa.C.S. § 1501; *see also Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 999-1000 (Pa. 2022) (quoting Section 1501).

begun experiencing a variety of symptoms[5] after installation of the smart meter but that the McKnights had failed to prove by a preponderance of the evidence that the smart meter caused those symptoms. The PUC slightly modified a few of the ALJ's findings but agreed with the ALJ's determination that the McKnights had failed to overcome PECO's rebuttal evidence. Specifically, they had presented no surrebuttal evidence and had failed to demonstrate a conclusive causal connection between RF emissions from the smart meter and Alexia McKnight's alleged physical harm. The PUC likewise rejected the McKnights' various arguments that the ALJ's decision was against the weight of the evidence.

The PUC also agreed with the ALJ's conclusion that Section 1501 of the Public Utility Code does not require a safety accommodation to allow an electric customer to elect against installation of a smart meter. The PUC concluded that PECO sufficiently accommodated its customers by offering to work with them to relocate smart meters if requested and to offer several different new types of meters. In this regard, the PUC also reiterated that the McKnights failed to prove that *any* meter was harming their health.

Accordingly, the PUC denied the McKnights' exceptions to the ALJ's decision, with some minor modifications not at issue here. The filing of the Petition in this Court followed.

---

[5] Those symptoms included headaches, difficulty concentrating, fatigue, insomnia, and feeling an urgent need to escape. McKnights' Br. at 8.

4

## II. Issues

The McKnights raise several issues[6] for review by this Court.[7]  First, they assert that the PUC misrepresented "the proximal cause" of their complaint by adding a reference to RFs rather than the smart meter as the alleged cause of their symptoms.  McKnights' Br. at 2.  Second, they insist that the PUC "arbitrarily and capriciously" altered the applicable burden of proof by requiring a "conclusive" connection between the smart meter and their alleged harm.  *Id.*  Third, they cryptically posit that they do not "hold [a] burden to show 'conclusive science' for all intermediate mechanisms in a case of specific cause without alternative possible explanation[.]"  *Id.*  Fourth, they contend that the PUC failed to properly consider Section 1501's requirement of safe and reasonable service as applied to Act 129's smart meter mandate.  *Id.*  Fifth, they maintain that the PUC lacked "medical authority" to order them to disregard their physician's advice to avoid exposure to RFs.  *Id.*  Sixth, they suggest that mandating installation of a smart meter "where there is uncertainty about the safety represent[s] a violation of inherent human rights[.]"  *Id.*  Seventh, they argue that as *pro se* litigants "who lack legal assistance and opportunity for financial recompense to pay for legal counsel[,]" they were denied due process.  *Id.*

---

[6] We note that, contrary to Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, the McKnights have not coordinated the argument sections of their brief to their statement of issues, in that they have identified 7 issues but divided their argument into 11 sections not labeled to correspond directly to those issues. *See* Pa.R.A.P. 2119(a).  Thus, we are left to speculate which argument sections are intended to address which specific issues.

[7] This Court's review of the Final Order is limited to determining whether the PUC violated a constitutional right, committed an error of law, rendered a decision not supported by substantial evidence, or violated its rules of practice. *Romeo v. Pa. Pub. Util. Comm'n*, 154 A.3d 422 (Pa. Cmwlth. 2017).

## III. Discussion

## A. Waiver

"Generally, a party waives appellate review of a claim when it fails to raise the issue before an administrative tribunal rendering a final decision." *HIKO Energy, LLC v. Pa. Pub. Util. Comm'n*, 209 A.3d 246, 261 (Pa. 2019) (first citing *SugarHouse HSP Gaming, L.P. v. Pa. Gaming Control Bd.*, 162 A.3d 353, 365 (Pa. 2017); and then citing *Wing v. Unemployment Comp. Bd. of Rev.*, 436 A.2d 179, 181 (Pa. 1981)). As our Supreme Court explained in *HIKO Energy*, "[i]ssue preservation requirements promote 'the orderly and efficient use of our judicial resources.' . . . Indeed, when an appellate court hears arguments on an issue not properly raised below, it effectively equates the lower tribunal's proceedings to 'merely a dress rehearsal.'" 209 A.3d at 262 (first quoting *In re F.C. III*, 2 A.3d 1201, 1212 (Pa. 2010); and then quoting *Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116 (Pa. 1974)).

Here, a review of the McKnights' exceptions before the PUC reveals that they failed to raise there the first, fifth, sixth, and seventh issues set forth in their Questions Presented before this Court.[8] *Compare* Reproduced Record, Vol. 3 at 2c-3c[9] *with* McKnights' Br. at 2. Accordingly, they have failed to preserve those issues for appellate review.

---

[8] Notably, the McKnights have failed to cite any part of the record before the PUC where they preserved these arguments as required by Rule 2119(e) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(e).

[9] The McKnights failed to number the pages in the reproduced record consistent with the requirements of Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173 (directing that the pages of the reproduced record shall be numbered as 1a, 2a, 3a, etc. and that "[w]here the reproduced record is bound in more than one volume, there shall be one continuous paging, regardless of the division into volumes"). For clarity, we cite the page numbers herein as set forth in the reproduced record.

For these reasons, we conclude that the McKnights have preserved for review only the second, third, and fourth issues set forth in their Questions Presented.[10]

---

[10] We further note waivers arising from the fact that the sixth and seventh questions presented have not been developed in the brief and that other issues raised in the argument are included in the questions presented. Moreover, even were the first, fifth, sixth, and seventh issues not waived, they lack merit.

In their first issue, the McKnights assert that the PUC mischaracterized their complaint as relating to RF emissions from the smart meter, rather than to the smart meter itself. However, their brief fails to explain how drawing such a distinction is meaningful or would affect the outcome of their complaint. *See* McKnights' Br. at 26-28.

In their fifth issue, the McKnights insist the PUC has no authority to mandate that they ignore their physician's advice to avoid exposure to smart meter emissions. However, their argument on this issue is essentially a recasting of their challenge to the applicable burden of proof that our Supreme Court recently clarified in *Povacz*. *See, e.g.*, McKnights' Br. at 44 (incorrectly asserting that in order to require Alexia McKnight to accept installation of a smart meter, "PECO and the PUC must have a great certainty about the effect of their actions as they relate to Alexia's individual safety," and suggesting that PECO should be required to "establish[] that conditions are so certainly safe that mandated exposure is reasonable"). The same is true of the McKnights' analogous sixth issue, which suggests that requiring exposure to emissions from a smart meter "where there is uncertainty about the safety" violates "inherent human rights." *Id.* at 2.

In their seventh and final issue, the McKnights contend that their inability to afford legal counsel denies them due process by forcing them to litigate *pro se* with limited legal knowledge. However, that argument is contrary to established Pennsylvania law and the "American Rule" in general, which requires each party to bear its own legal costs in the absence of an applicable exception. *See, e.g.*, *V.S. v. Dep't of Pub. Welfare*, 131 A.3d 523, 529 (Pa. Cmwlth. 2015) (quoting *Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa. Super. 2003), in which "due process rights were not violated [by the absence of legal representation in a civil proceeding] because '[t]he law is well settled that there is no right to counsel in civil cases'"); *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009) (explaining that "[u]nder the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception") (citation omitted).

7

## B. Applicable Burden of Proof

In their interrelated second and third issues, the McKnights challenge the burden of proof applied by the ALJ and subsequently by the PUC in reviewing the McKnights' exceptions to the ALJ's decision. Specifically, the McKnights maintain that requiring proof by a preponderance of the evidence is inconsistent with requiring proof of a conclusive causal connection between smart meter emissions and alleged physical harm. They also contend that because they are alleging specific rather than general causation, this standard of proof should not apply. Our Supreme Court's recent decision in the consolidated appeals in *Povacz* effectively disposes of the McKnights' burden of proof arguments here.

In *Povacz*, our Supreme Court explained that, "[a]lthough Act 129 does not provide an electric customer with the right to opt-out of the installation of a smart meter at their residence, they may file a complaint raising a claim that installation of a smart meter violates Section 1501 of the [Public Utility] Code." 280 A.3d at 999. Because an EDC must furnish service that is both safe and reasonable, "[t]o carry their burden of proof on a Section 1501 claim, a smart meter challenger may be required to present medical documentation and/or expert testimony demonstrating that the furnishing of a smart meter constitutes unsafe or unreasonable service in violation of Section 1501 under the circumstances presented." *Id.* at 1000 (citing *Kreider v. PECO Energy Co.*, P-2015-2495064, 2016 WL 406549, at *14 (Pa. P.U.C. Jan. 28, 2016)).

In *Povacz*, as in this case, the PUC found that the complaining customers failed to prove by a preponderance of the evidence that there was a conclusive causal connection between exposure to emissions from smart meters and adverse human health effects. 280 A.3d at 1001. Like the McKnights, the customers

8

in *Povacz* also challenged the application of the "conclusive causal connection" standard of proof where they were alleging specific individualized harm. *Id.* The customers argued they should be required merely to prove that smart meters posed a risk of harm. *Id.* at 1003. In connection with that argument, they maintained that their treating physicians, not PECO or the PUC, were best situated to protect their individual health. *Id.*

Our Supreme Court rejected the customers' burden of proof arguments in *Povacz*. The Court observed that "[i]n applying the preponderance of the evidence burden of proof, the PUC has used the evidentiary standard of 'conclusive causal connection' for scientific evidence proffered to establish that RF emissions result in adverse human health effects for almost three decades." 280 A.3d at 1004. Throughout those intervening decades,

> fear about the potentially harmful effects of RF emissions and the inconclusiveness of scientific research and studies have remained constant. To the extent [c]ustomers challenge the safety of smart meters based on their individualized concerns about adverse effects, we conclude that neither fear nor inconclusive scientific research is sufficient to prove that smart meter technology constitutes unsafe service under Section 1501.[] Allowing fear – however reasonable given the inconclusiveness of scientific research and studies – to support a finding or conclusion that smart meter technology is unsafe, in the absence of substantial evidence of causality between RF emissions and adverse human health effects, eliminates the requirement that a customer prove the utility is responsible or accountable for the problem described in the complaint.

*Id.* at 1005 (footnote omitted). The Supreme Court explained the interaction of the preponderance of the evidence standard with the requirement of a conclusive causal connection as follows:

9

"Conclusive causal connection" means that the proffered evidence must support the conclusion that a causal connection existed between a service or facility and the alleged harm. It is not possible for evidence that is inconclusive to be sufficient to meet the preponderance of the evidence standard. Inconclusive means that the evidence does not lead to a conclusion of a definite result one way or the other. While the preponderance of the evidence standard is not stringent, it does require that the plaintiff's evidence ever so slightly (like, with the weight of a feather) supports the plaintiff's contention. Evidence that does not support a conclusion (or is inconclusive) cannot meet that minimal burden . . . . Thus, where scientific evidence is required to establish the safety of a service or facility, *use of the evidentiary standard of 'conclusive causal connection' to assess the evidence is correct*.

*Id.* at 1006-07 (emphasis added) (internal citations omitted).

The McKnights' burden of proof argument here is virtually identical to the arguments asserted by the complaining customers in *Povacz*. There, as here, the customers "challenge[d] the safety of smart meters supported by their own testimony and documented by evidence of their unique medical conditions from their treating physicians." 280 A.3d at 1007. Like the McKnights here, the customers in *Povacz* argued that their allegations of harm were specific, not general, and that the "conclusive causal connection" requirement should not apply. *Id.* Our Supreme Court rejected that argument in *Povacz*, concluding that

[t]he generic versus specific nature of a claim does not diminish the need to prove, by a preponderance of the evidence – with expert opinion within a reasonable degree of certainty – that the service or facility is unsafe and that a causal connection exists between the allegedly unsafe service or facility and harm, either to the public at large or to specific individuals.

*Id.* The Supreme Court observed that "[a]lthough [the c]ustomers claimed individualized injury based on exposure to RF emissions, their expert evidence fell short of proving by the preponderance of the evidence that PECO was responsible or accountable for the problem described in their complaints." *Id.* at 1008. Moreover, the Court reasoned,

> [e]ven if [the c]ustomers' expert testimony was sufficient to meet the preponderance of the evidence burden of proof, the PUC was free to conclude that the contrary evidence was more weighty. That said, we find no error in the PUC's conclusion and the Commonwealth Court's affirmance that [the c]ustomers failed to demonstrate that the installation of smart meters was unsafe. They simply failed to carry their burden of proving that PECO's installation of smart meters at their homes was – more likely than not – responsible or accountable for the problems described in their complaints and the PUC proceedings.

*Id.*

Here, the PUC made the same finding, based on weighing the parties' competing evidence. In doing so, the PUC applied the correct burden of proof, as confirmed by our Supreme Court's analysis and holding in *Povacz*. We are not unsympathetic to the McKnights' claims regarding their physical symptoms. However, we are constrained to conclude that here, as in *Povacz*, the PUC did not err in reaching its conclusion that the McKnights failed to meet their burden of proving, by a preponderance of the evidence, a conclusive causal connection between the smart meter and the health effects they have alleged.

### C. Section 1501's Requirement of Safe and Reasonable Service

As noted above, Section 1501 requires EDCs, including PECO, to furnish safe and reasonable utility service. 66 Pa.C.S. § 1501. The McKnights insist

11

that as long as any uncertainty remains concerning the safety of smart meters, mandating acceptance of the meters' installation violates Section 1501. In addition, they maintain that forcing them to choose between accepting a smart meter and forgoing electric service altogether is unreasonable. We disagree.

In *Povacz*, our Supreme Court expressly concluded "that Section 2807(f)(2) [of Act 129] imposes a mandate on EDCs to furnish smart meter technology to all electric customers within an electric distribution service area, *regardless of a customer's preference*." 280 A.3d at 992 (emphasis added); *see also* 66 Pa.C.S. § 2807(f)(2). Further, the Supreme Court concluded that, under Act 129, "authority to select and install a certain type of electric meter rests solely with EDCs, in this case PECO, not the customer . . . . PECO selected smart meters. Thus, [the c]ustomers' suggestion that the installation of smart meters is subject to customer choice is not supported by the statute." *Povacz*, 280 A.3d at 994. From that premise, the Court analyzed and rejected the customers' assertions that forced installation of smart meters violated Section 1501's requirement of safe and reasonable service.

Regarding allegedly unsafe and unreasonable service, the customers in *Povacz* argued that "(1) established science provides a basis on which to conclude that RF emissions from smart meters could expose [the c]ustomers to harm, and (2) because smart meters have not been proven to be safe, it is unreasonable to impose on [the c]ustomers forced exposure to RF emissions from smart meters." 280 A.3d at 1001. Recognizing "the potential for overlap between an 'unsafe' inquiry and an 'unreasonable' inquiry," our Supreme Court observed that the customers' challenges to both safety and reasonableness were "based exclusively on their personal medical conditions [and] relied on the same inconclusive research and studies regarding the effects of RF emissions on human health . . . ." *Povacz*, 280 A.3d at 1012. Based

12

on the PUC's finding that the customers failed to overcome PECO's contrary evidence of inconclusiveness regarding the safety of emissions from smart meters, our Supreme Court "discern[ed] no basis on which to challenge the PUC's conclusion that [the c]ustomers failed to establish a violation of Section 1501 based on unreasonable service." *Id.*

Our Supreme Court's analysis and conclusions in *Povacz* concerning alleged violations of Section 1501 are directly applicable and controlling here. The McKnights, like the customers in *Povacz*, argued that they established a violation of Section 1501's safety and reasonableness requirement by offering scientific evidence of the potential for harm, along with medical evidence and their own testimony concerning the specific effects they allegedly suffered individually. As in *Povacz*, the PUC here found the scientific evidence of potential harm inconclusive and determined that the McKnights failed to sustain their burden of proof. Consistent with our Supreme Court's holdings in *Povacz*, we discern no basis here to disturb the PUC's finding that the McKnights failed to prove a violation of Section 1501.

## IV. Conclusion

Based on the foregoing discussion, we affirm the Final Order issued by the PUC.

_____
CHRISTINE FIZZANO CANNON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexia and Lawrence McKnight,     :
                   Petitioners     :
    :
            v.     :
    :
Public Utility Commission,     :     No. 1253 C.D. 2019
               Respondent     :

# **O R D E R**

AND NOW, this 20th day of March, 2024, the final order of the Pennsylvania Public Utility Commission dated August 8, 2019 is AFFIRMED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge